# Glenn *v.* Kittanning Brewing Company et al., Appellants.

*Corporations—Directors—Fight for control—Issuance of stock—Purchase by directors present at meeting — Right of stockholders to participate in issue—Setting aside of issue—Trust—Fraud—Remedy at law—Equity—Jurisdiction—Bill in equity by stockholder—Injunction.*

1. While the general rule is that a stockholder is not warranted in proceeding as an individual to redress a wrong done to the corporation, without a formal demand and refusal of the corporation to bring proper action, yet stockholders are not required, either in law or in equity, to do a vain or foolish thing, and where the wrongdoers are the majority of the board of directors, who committed the wrong complained of, it is not reasonable to suppose that a demand upon them to bring corporate action would produce results, and under such circumstances stockholders are justified in instituting proceedings in their own name, without first demanding action on the part of the corporate officers.

2. Where the question of the control of a corporation is involved, the remedy at law for damages for the improper sale of stock is inadequate, and where an averment of fraud on the part of those having management of the company appears, as against the rights or the interest of the stockholders, a court of equity has jurisdiction to inquire into the transaction and make such decree as the circumstances may warrant.

3. The directors of a corporation stand in the position of trustees for the entire body of stockholders, and while stock owned by a director is his individual property, to be dealt with as he sees fit, yet when he acts in his official position he is acting not merely as an individual but as representative of others and is prohibited from taking advantage of his position for his personal profit or benefit to the detriment of the stockholders whom he represents.

4. The directors of a corporation are bound to give stockholders notice of a new issue of stock and an opportunity to subscribe for the stock in proportion to their present holdings, although such issue may be long after the business of the corporation was begun; and where the directors fail to give such notice, but purchase the stock themselves for the purpose of gaining control of the corporation, the issue may be set aside at the instance of a stockholder.

5. In a suit in equity brought by a stockholder of a brewing company on behalf of himself and other stockholders who might

join, praying for a declaration that a certain stock certificate issued to a director of the company was invalid, it appeared that the stockholders and directors had been split into two factions, and that a majority of the board of directors owned and controlled only a minority of the stock while the other directors owned or controlled the majority. At a meeting of the board attended by the directors in sympathy with the minority interests, an issue of 250 shares of treasury stock was authorized, in pursuance of which the fifty shares in question were issued to one of the directors present, which gave the directors voting for the issue control of a majority of the stock. No opportunity was given the other stockholders, including the plaintiff, to take up any part of the new issue. Defendants contended that the stock was issued to put the corporation in funds to pay a note which the company had endorsed. There were other assets available for payment of the note. *Held,* (1) the finding that the issue was for the purpose of gaining control of the corporation was amply supported by the evidence; (2) even had there been sufficient reason for the issuance of the new stock, the directors had no right to subscribe therefor without first notifying the stockholders and giving them an opportunity to take up the stock in proportion to their present holdings; (3) under the circumstances, the fact that no previous demand was made by the plaintiffs on the corporation to take action in the matter is immaterial, and (4) the decree granting the relief prayed for was properly entered.

Argued Sept. 26, 1917. Appeals, Nos. 28, 29 and 30, Oct. T., 1917, by defendants, from decree of C. P. Armstrong Co., Sept. T., 1916, No. 203, awarding an injunction, in case of Joseph W. Glenn et al. v. The Kittanning Brewing Company, a corporation under the laws of Pennsylvania, George W. Reese, F. B. Stage and Dr. S. A. S. Jessop. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity for an injunction. Before KING, P. J. The opinion of the Supreme Court states the facts.

The court on final hearing awarded an injunction as prayed for. Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and conclusions of law, and the decree of the court.

*Harry C. Golden,* with him *John E. Malone, Bernard J. Myers* and *J. H. Painter,* for appellants.—The plaintiffs have an adequate remedy at law. The stock which was issued was not a new issue, but part of the original stock. If the stock has been sold for less than the fair value, the plaintiff's remedy is by suit at law for damages or in equity for an accounting for profits made on the stock: Reese v. The Bank of Montgomery Co., 31 Pa. 78; Bank of Montgomery v. Reese, 26 Pa. 143; Curry v. Scott, 54 Pa. 270; Shellenberger v. Patterson, 168 Pa. 30; Strickler v. McElroy, 45 Pa. Superior Ct. 165; Provident Trust Co. v. Geyer, 248 Pa. 423; Hechelman v. Geyer, 248 Pa. 430; Hechelman v. Geyer, 252 Pa. 123; Monongahela Valley Brewing Co. v. Beedle et al., 63 P. L. J. 783.

The directors unquestionably have a legal right to sell, or authorize the sale of, unissued stock: Reese v. Bank of Montgomery Co., 31 Pa. 78; Curry v. Scott, 54 Pa. 270; Shellenberger v. Patterson, 168 Pa. 30.

A desire or attempt to gain control of the corporation, and of the corporate election, is not, in itself, unlawful: Hughes v. Citizens' E. L., H. & P. Co., 226 Pa. 95; Gallagher v. McAdams, 49 Pa. Superior Ct. 81.

The plaintiffs have no standing to maintain this action; the right if it exists is in the corporation and the plaintiffs have shown no demand upon the corporation or refusal upon the part of the corporation to act: Law v. Fuller, 217 Pa. 439; Pellio v. Bulls Head Coal Co., 231 Pa. 157; Wolf v. Penna. R. R. Company, 195 Pa. 91.

*John W. Reed,* with him *R. L. Ralston,* for appellee.— When the capital stock of a corporation is increased by the issue of new shares, each holder of the original stock has the right to offer to subscribe for and demand from the corporation such a proportion of the new stock as the number of shares already owned by him bears to the whole number of shares before the increase: Strickler v. McElroy, 45 Pa. Superior Ct. 165; Morris v. Stevens,

178 Pa. 563; Electric Co. of America v. Edison Electric Illuminating Co., 200 Pa. 516.

A dissenting stockholder may cause to be set aside a sale of unissued stock to other stockholders at a grossly inadequate price to enable them to obtain control: Essex v. Essex, 141 Mich. 200; Trask v. Chase, 107 Me. 137; Luther v. Luther Co., 118 Wis. 112; Arkansas Society v. Eichholtz, 45 Kan. 164; Hilles v. Parrish, 14 N. J. Eq. 380; Way v. American Grease Co., 60 N. J. Eq. 263; Humboldt Driving Park Assn. v. Stevens, 34 Neb. 528; Whitaker v. Kilby, 55 N. Y. Misc. Rep. 337; Schmidt v. Pritchard, 135 Iowa 240.

A court of equity has jurisdiction to control the issue of any stock in violation of the pro rata rule: Snelling v. Richard, 166 Fed. Repr. 635.

It was not necessary that a demand for redress should first have been made upon the defendant: Commonwealth Title Ins. & Trust Co. v. Seltzer, 227 Pa. 410; Treat v. Penna. Mutual Life Insurance Co., 203 Pa. 21.

OPINION BY MR. JUSTICE FRAZER, January 7, 1918:

Defendants have appealed from a decree entered conformably to a bill in equity brought by Joseph W. Glenn as a stockholder of the Kittanning Brewing Company on behalf of himself and other stockholders joining therein asking the court to declare illegal and invalid a certificate for fifty shares of the capital stock of the corporation issued to F. B. Stage, one of the defendants, and a member of the company's board of directors, and for an order that such certificate be surrendered to the company for cancellation and Stage enjoined from voting the stock or making transfer thereof. A preliminary injunction was subsequently made perpetual and a decree entered in accordance with the prayers of the bill.

The main facts upon which the disposition of the case depends are not in dispute. The board of directors of the brewing company was composed of five members consisting of the original plaintiff Glenn, Harry G. Luker,

who intervened with others as plaintiffs, and the three defendants. The capital stock of the company consisted of one thousand shares of the par value of $100 each, of which seven hundred and fifty had been issued. The company carried on its business successfully for approximately ten years, gradually increasing its plant and equipment and accumulating a surplus until July, 1916, when the book value of its outstanding stock was $322.79 per share. In the meantime, by reason of differences among the stockholders, two factions had arisen. Plaintiff Glenn and Luker, two of the board of directors, represented one faction and the defendants Reese, Stage and Jessop, the remaining members and the majority of the board, the other. Plaintiffs faction though a minority of the board, owned or controlled a majority of the stock, consisting of 381 of the 750 shares outstanding; 359 shares were controlled by defendant faction and the remaining ten shares were in the hands of neutral parties. On July 7, 1916, at a regular meeting of the board of directors, attended by the three defendants only, a resolution was adopted authorizing the manager, Stage, "to sell any portion of the 250 shares of the treasury stock at a price not less than par, one hundred dollars per share, for the purpose of paying off the indebtedness of the company." Notice of this meeting was not required to be given the directors, the court however found the secretary made an honest effort to notify the absent members by telephone, and that such notice was actually received by Glenn.

Agreeably to the resolution, and within a week after the meeting, fifty shares of the company's stock were issued to Stage at par. These shares gave defendants the control of the company. Defendants give as reason for the issuing of the additional stock, a demand by the Safe Deposit & Title Guaranty Company for payment of a demand note of the brewing company for six thousand dollars held by the guaranty company.

The findings of the court below, and the testimony in

the case, show the brewing company intended to become endorser on the note of one McGregor for six thousand dollars to enable the latter to purchase a hotel property. The McGregor note was to be discounted by the guaranty company and its president had informed the brewing company that before such endorsement would be accepted the six thousand dollar demand note must be paid. No other demand was made for payment of the note. As a matter of fact, the trust company held, as collateral, bonds of the brewing company to the extent of eight thousand dollars and the brewing company also held in its treasury an additional number of its corporate bonds acceptable as collateral, and available for the purpose of raising funds for any legitimate purpose required by the company. The brewing company was under no obligation to become surety on the proposed loan, and did so merely as a matter of business policy, with a view to procure a new customer for its products. No opportunity was given other stockholders to subscribe proportionately for the purchase of the fifty shares of the stock issued, and they were without knowledge of the transaction until more than a month after the issue had been made. No reason on account of financial conditions of the company was apparent for issuing the additional stock and the court found the real purpose of the transaction was to place the control of the company in the hands of the faction represented by the defendants, and in its opinion stated as follows: "While ostensibly, the purpose in selling the said fifty shares of the unissued capital as aforesaid to Stage, was, as defendants contend, to pay the $6,000 note of the company, then owing to the Safe Deposit & Title Guaranty Company, was that in truth and in fact the real purpose? The circumstances, the surroundings, the existing conditions, the factional troubles, the singleness of purpose pursued, as shown and fairly deducible from the evidence, clearly point to the conclusion that the real, underlying purpose was to obtain control of the corporation.......We

are confirmed in this view, when we see that no obligation rested upon the corporation to assist McGregor by loaning its endorsement to him, and that under all the facts in the case the loan could not be regarded as a desirable one from the standpoint of the security. Aside from said loan, there would have been no call from the bank—at least that is a fair inference from the evidence, for payment of the $6,000 note. However, if there had been necessity to pay off said loan, why should a sale of the unissued stock be resorted to when 21,000 dollars' worth of the first mortgage bonds lay in the treasury of the company, available for sale or for collateral to obtain loans, and another $8,000 worth then up as collateral to secure said $6,000 note, which at once would be available upon payment of the note? It is not at all apparent that the financial condition of the company, at the time, demanded the sale of the said stock."

The findings of fact by the court below are amply supported by the testimony in the case and will therefore not be disturbed: Myers v. Consumers' Coal Co., 228 Pa. 444; Hull v. Delaware & Hudson Co., 255 Pa. 233. Nor does error appear in the legal conclusions on the facts found. No rule is better established than that the directors of a corporation stand in the position of trustees for the entire body of stockholders, and while stock owned by the director is his individual property to be dealt with as he sees fit in the same manner and to the same extent as other stockholders, yet, when he acts in his official position, he is acting not merely as an individual but as representative of others and is prohibited from taking advantage of his position for his personal profit or to reap personal benefit to the detriment of the stockholders whom he represents. Whenever there is an intimation that a director has violated the duty thus imposed upon him by virtue of his office, or has failed to act fairly and honestly toward those whom he represents, the law ceases to look at the mere form of the device or means employed and "pierces through

the surface and seizes upon the evils which lie within":
Tenth National Bank of Philadelphia v. Smith Construction Co., 242 Pa. 269; Hechelman v. Geyer, 248 Pa. 430.

The circumstances under which the stock in controversy was issued and purchased by one of the directors who voted for the resolution, were adequate to raise a doubt of the good faith of the directors. Assuming the resolution was proper and there was sufficient reason for issuing the stock, the directors who were present at the meeting had no right to subscribe for the new issue without first notifying all stockholders and affording them an opportunity to take up the stock in proportion to the amount of the shares already held by them. This is especially true, in view of the long standing dispute between the two factions and the attempt by both to obtain a controlling interest. The directors, as a board, had knowledge of this fact, and there were consequently particular reasons requiring them to act impartially and in the interest of the stockholders as a whole. The former were bound to give notice and afford the latter an opportunity to subscribe for the stock on equal terms and it is immaterial that such additional issue was made long after the business of the company was begun: Morris et al. v. Stevens et al., 178 Pa. 563; Electric Co. v. Electric Co., 200 Pa. 516; Cook on Corporations, Section 286.

We cannot agree with the contention that a court of equity is without jurisdiction to set aside the transaction complained of and that plaintiffs' remedy, if any, is by action at law for damages. Where the question of control of the corporation is involved, the remedy at law for damages for an improper sale of stock may be entirely inadequate, and where an averment of fraud on the part of those having management of the company appears, as against the rights and interest of the stockholders, a court of equity has jurisdiction to inquire into the transaction and make such decree as the circumstances may warrant: Electric Co. v. Electric Co., supra.

The fact that no previous demand was made by plain-

tiffs on the corporation to take action in the matter is of no importance under the facts in this case. Although the general rule is that a stockholder is not warranted in proceeding as an individual without a formal demand and refusal of the corporation to bring proper action: Commonwealth Title Insurance & Trust Co. v. Seltzer, 227 Pa. 410; yet plaintiffs are not required, either in law or equity, to do a vain or useless thing. The wrongdoers in this case were the majority of the board of directors and as they committed the wrong complained of, it is scarcely reasonable to suppose a demand upon them to bring corporate action would have produced results. Plaintiffs were therefore justified in instituting proceedings in their own name without first demanding action on the part of the corporate officers: Treat v. Pennsylvania Mutual Life Insurance Co., 203 Pa. 21.

The decree of the court below is affirmed.