11 F.3d 1197
 Fed. Sec. L. Rep. P 98,001, 27 Fed.R.Serv.3d 1083
 Alexander GARBER, Appellant,
v.
Paul E. LEGO, David T. McLaughlin, Richard R. Pivirotto,
Theodore Stern, Robert W. Campbell, John B. Carter, Rene C.
McPherson, Richard M. Morrow, Frank C. Carlucci, Barbara
Hackman Franklin, Hays T. Watkins and Westinghouse Electric
Corporation, Appellees.
 No. 92-3620.
 United States Court of Appeals,
Third Circuit.
 Argued May 13, 1993.
Decided Dec. 16, 1993.
 
 Roger W. Kirby (Argued), Irving Malchman, Kaufman, Malchman, Kaufman & Kirby, New York City, H. Yale Gutnick, Strassburger McKenna Gutnick & Potter, Pittsburgh, PA, for appellant.
 Dennis J. Block (Argued), Stephen A. Radin, Darla C. Stuckey, Weil, Gotshal & Manges, New York City, Joseph A. Katarincic, Terrance J. O'Rourke, Katarincic & Salmon, Pittsburgh, PA, for all appellees except Westinghouse Elec. Corp.
 Leonard Fornella, Polito & Smock, P.C., Pittsburgh, PA (William F. Stoll, Jr., John J. Neeley, Westinghouse Elec. Corp. Law Dept., Pittsburgh, PA, of counsel), for appellee Westinghouse Elec. Corp.
 Before: BECKER, HUTCHINSON and ROTH, Circuit Judges.
 OPINION OF THE COURT
 ROTH, Circuit Judge:
 
 
 1
 This case arises from a dispute over monetary awards from corporate incentive funds to officers and employees of Westinghouse Electric Corporation ("Westinghouse"). Alexander Garber, a holder of Westinghouse common stock, brought a shareholder derivative suit against the individual members of Westinghouse's board of directors in response to the incentive awards. The derivative suit sought damages on behalf of Westinghouse, jointly and severally against the individual directors, for their actions relating to the incentive awards.
 
 
 2
 Garber is a citizen of Florida and Westinghouse is incorporated in Pennsylvania. The district court had diversity jurisdiction under 28 U.S.C. Sec. 1332. Defendants filed a motion to dismiss, contending that Garber failed to sufficiently establish the reasons for not making a pre-complaint demand on Westinghouse to secure the corporation's enforcement of the actions Garber sought. The district court dismissed Garber's amended complaint without prejudice for failure to comply with the pre-complaint demand requirement of Federal Rule of Civil Procedure 23.1 and Pennsylvania Rule of Civil Procedure 1506.[1] We agree with the district court and will affirm its decision.
 
 I.
 
 3
 At issue in this appeal is whether Garber sufficiently set forth the reasons for not making a pre-complaint demand. His amended complaint acknowledges that no demand was made on Westinghouse's board of directors. Instead, his amended complaint sets forth the reasons why such a demand would have been futile. This appeal is concerned solely with the question of whether Garber set forth sufficient pleadings to excuse demand pursuant to Federal Rule 23.1 and Pennsylvania Rule 1506.
 
 
 4
 The genesis of this suit was action taken by Westinghouse to reward its top employees. Specifically, Garber objected to awards provided by Westinghouse pursuant to its Annual Performance Plan for "key" employees ("Key Plan") and at least one other incentive plan for other employees. The shareholder-approved Key Plan is designed to provide payments to Westinghouse's key employees as an incentive to enhance efficiency and profitability. The Key Plan is administered by the five members of the Management Compensation Policy Committee ("Compensation Committee") of the board of directors. At the time of the awards which are the subject of Garber's suit, the Compensation Committee was comprised of Robert Campbell, John B. Carter, David T. McLaughlin, Rene C. McPherson, and Richard R. Pivirotto. Each served as a director on Westinghouse's board, and all are named defendants in this suit.[2] The five members of the Compensation Committee were non-employee, non-management directors. Garber does not allege that any of these individuals received incentive awards.
 
 
 5
 Under the Key Plan, the Compensation Committee is authorized to determine when, to whom, in what form, in what amount, over what period of time and under what terms, conditions, and limitations awards will be made. The Compensation Committee's determinations are conclusive, except that the Key Plan may be amended or terminated at any time by the board of directors. Participation is limited to "key" employees, defined as employees selected by the Compensation Committee who are in a position to influence the results of Westinghouse's operations. Joint Appendix ("JA") at 25. Under the Key Plan, total annual awards can not exceed five percent of the consolidated net income of the corporation and its subsidiaries during such year, before deducting income taxes and any provision for such additional compensation, plus any unused incentive fund amounts carried forward from the previous year. If the full amount available under the Key Plan is not allocated in a given year, such portion of the balance as determined by the Compensation Committee may be carried forward and be available for incentive awards in any subsequent year or years.
 
 
 6
 In his amended complaint, Garber avers that in or about January 1991 the Compensation Committee made awards under the Key Plan and other incentive plans totalling $168,490,050 for the three year period ending December 31, 1990.[3] Garber does not aver whether this amount was approved in one action by the Compensation Committee in January 1991 or whether the amount is the sum of annual awards approved by the Compensation Committee in separate actions in 1988, 1989, and 1990. While the amended complaint is ambiguous, it is apparent from proxy statements filed with the Securities and Exchange Commission by Westinghouse that the amount pleaded by Garber represents annual awards made over the three year period between 1988 and 1990. The district court found that the Compensation Committee awarded $28 million in Key Plan awards to 292 Westinghouse employees on January 29, 1991.[4] This total included compensation awards to board members Paul Lego and Theodore Stern, the only board members employed as officers of the corporation.
 
 
 7
 Prior to the time the awards were approved by the Compensation Committee, Westinghouse reported consolidated net income of $1,403 million for 1990. On February 27, 1991, Westinghouse restated its consolidated net income before taxes for 1990 to reflect a re-valuation of certain Westinghouse Credit Corporation assets,[5] the effect of which was to reduce Westinghouse's consolidated net income by $975 million, from $1,403 million to $428 million before taxes.[6]
 
 
 8
 Garber contends that prior to the incentive awards, defendant Lego was advised that the assets held by Westinghouse Credit had substantially deteriorated. He further contends that individual members of the Compensation Committee and the board of directors "knew or were told that a major write-down could be pending which would eliminate or substantially reduce Westinghouse's reported net income for 1990." JA at 7 (Plaintiff's Amended Complaint p 14). Garber alleges that, despite this knowledge, the Compensation Committee and board "intentionally or recklessly" proceeded to make or approve the incentive awards and that, after the write-down was announced, the individual defendants "intentionally or recklessly" approved or acquiesced in the awards and did nothing to cancel or recover them. Id. at 8 (Plaintiff's Amended Complaint p 14).
 
 
 9
 Garber asserts that the incentive awards "constituted such a gross misuse and abuse of the Key Plan and the other plans as to amount to waste" and that because the Compensation Committee knew of the write-down, the incentive awards exceeded the limits imposed under the Key Plan. Id. at 11 (Plaintiff's Amended Complaint pp 15, 16).
 
 
 10
 Garber also avers that he made no pre-complaint demand on Westinghouse's board of directors because doing so would have been futile. In support of this assertion, Garber contends that such action would have been futile because Westinghouse's directors would not sue themselves, having acted intentionally or recklessly in making, approving, or acquiescing in the incentive awards despite their knowledge of the impending write-down. Garber's brief to this court asserts that this pleading complied with Federal Rule 23.1 and Pennsylvania Rule 1506 governing shareholder derivative suits.
 
 
 11
 Garber filed his original complaint on December 12, 1991, and an amended complaint on April 28, 1992. On May 15, 1992, defendants filed a motion to dismiss. On October 2, 1992, the district court filed an order granting defendant's motion to dismiss Garber's amended complaint for failure to comply with the pre-litigation demand requirement of Federal Rule 23.1 and Pennsylvania Rule 1506. In its order, the district court adopted the Magistrate Judge's July 10, 1992, report as the opinion of the district court. Garber filed a timely notice of appeal.
 
 II.
 
 12
 The district court had jurisdiction over this diversity action under 28 U.S.C. Sec. 1332. Appellate jurisdiction for this appeal from a final order of the district court is predicated upon 28 U.S.C. Sec. 1291.
 
 
 13
 To the extent that we are reviewing the district court's determination of demand futility based upon the facts of this case, the scope of our review is for abuse of discretion. Blasband v. Rales, 971 F.2d 1034, 1040 (3d Cir.1992). Our review of the legal precepts employed by the district court and of its interpretation of those legal precepts is plenary. Id.
 
 III.
 
 14
 A shareholder derivative suit "permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.' " Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, ----, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (quoting Ross v. Bernhard, 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970)). Both the federal and the Pennsylvania Rules of Civil Procedure require that, prior to filing a derivative suit, a shareholder must either make a demand on the corporation to obtain the desired action or allege in the complaint the reasons for not making the effort. See Fed.R.Civ.P. 23.1; Pa.R.Civ.P. 1506. These rules are predicated on the notion that "[t]he decision to bring a lawsuit or to refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and consequently is the responsibility of the directors." Blasband, 971 F.2d at 1048.
 
 
 15
 In discussing the origins of the derivative suit, the Supreme Court in Kamen noted:
 
 
 16
 Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." To prevent abuse of this remedy, however, equity courts established as a "precondition for the suit" that the shareholder demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions."
 
 
 17
 500 U.S. at ----, 111 S.Ct. at 1716 (citations omitted). This precondition requirement established by courts of equity has been incorporated in federal Rule of Civil Procedure 23.1 which states in relevant part:
 
 
 18
 the complaint [in a derivative action] shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.
 
 
 19
 Although Rule 23.1 "clearly contemplates both the demand requirement and the possibility that the demand may be refused, it does not create a demand requirement of any particular dimension. On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." Kamen, 500 U.S. at ----, 111 S.Ct. at 1716. The Court held that federal courts, in assessing whether the futility exception to demand on the corporation applies, must look to the substantive requirements of the exception as it is defined by the state of incorporation. Id. at ----, 111 S.Ct. at 1723. Westinghouse is incorporated in Pennsylvania, so we are compelled to examine the demand futility exception as codified in the Pennsylvania statute and interpreted by the Pennsylvania courts.
 
 
 20
 In Pennsylvania, the filing of a shareholder derivative suit is governed by Pennsylvania Rule of Civil Procedure 1506. Prior to the adoption of Rule 1506 by the state legislature in 1952, the state Supreme Court considered on a number of occasions the ability of a shareholder to bring a derivative suit on behalf of a corporation. In doing so, the state Supreme Court has thoroughly developed the scope of its futility exception. In addition, the state Supreme Court had adopted Equity Rule 37.[7] This precursor to Rule 1506 is virtually identical in the procedural requirements it established before a shareholder derivative suit could be maintained. Because Rule 1506 is based on this earlier jurisprudence, it is helpful to consider the state Supreme Court's decisions in this area of the law.
 
 
 21
 "The right of an individual shareholder to act for the corporation is exceptional, and only arises on a clear showing of special circumstances, among which inability or unwillingness of the corporation itself, demand upon the regular corporate management, and refusal to act, are imperative requisites." Wolf v. Pennsylvania R. Co., 195 Pa. 91, 45 A. 936 (1900). The Pennsylvania Supreme Court recognized that in some instances demand would be "useless" and thus would be excused. 195 Pa. at 95, 45 A. at 937. In such instances, the "charge should rest on some act, affirmative or permissive, manifestly in violation of duty [to act], and manifestly the result of fraud, and not erroneous judgment." Id. (emphasis added). In Wolf, the court held that the plaintiff failed "to aver facts sufficient to excuse the want of demand, and to meet the requirement that plaintiff must show every reasonable effort to get the corporation to act." Id.
 
 
 22
 In Kelly v. Thomas, 234 Pa. 419, 83 A. 307 (1912), the Pennsylvania Supreme Court refused to excuse demand where the plaintiff did "not aver in detail specific acts done by any of the defendants showing fraudulent collusion, but contents himself with general allegations of fraud...." 234 Pa. at 427, 83 A. at 309.
 
 
 23
 Fraud is largely a conclusion of law, and all our cases agree that general allegations which do not set forth the particular circumstances are not sufficient. Where it satisfactorily appears that demand upon the officers of a corporation is useless, such a course need not be pursued; but here plaintiff has not made it plain from the facts stated that a majority of the board of directors of the corporation in question had been, or probably would have been, faithless to their trust; hence he has not shown a right to maintain a [derivative suit].
 
 
 24
 Kelly, 234 Pa. at 427, 83 A. at 309.
 
 
 25
 When an individual "acts in his official position, he is acting not merely as an individual, but as representative of others, and is prohibited from taking advantage of his position for his personal profit or reaping personal benefit to the detriment of the stockholders whom he represents. Whenever there is intimation that a director has failed ... to act fairly or honestly toward those whom he represents, the law ceases to look at the mere form of the device or means employed, and 'pierces through the surface, and seizes upon the evils which lie within.' " Glenn v. Kittanning Brewing Co., 259 Pa. 510, 516-17, 103 A. 340, 342 (1918) (citations omitted).
 
 
 26
 Two years later, the Pennsylvania Supreme Court reiterated its belief that demand would only be excused in narrow circumstances. "Where it appears that fraudulent acts prejudicial to the interests of the corporation have been committed, so interwoven with the conduct of the corporate managers and of such a nature that it might be presumed the officers would commit a breach of trust in refusing to proceed, a demand is not necessary, as it would be vain and useless." Wilson v. Brown, 269 Pa. 225, 112 A. 1, 2 (1920). The court proceeded to hold that "[o]rdinarily there is no presumption that officers will commit such breach of trust, and the charge that they will should rest on acts, affirmative or permissive, duly averred, manifestly in violation of duty, and manifestly the result of fraud and not erroneous judgment." Id. (citing Wolf ). See also Evans v. Diamond Alkali Co., 315 Pa. 335, 172 A. 678 (1934) (court will not presume that corporate officers committed breach of trust in refusing to act in response to shareholder demand; "charge that they will refuse to act should rest on acts, affirmative or permissive, manifestly the result of fraud, and not of erroneous judgment." Id. 172 A. at 679).
 
 
 27
 In 1952, the Pennsylvania legislature adopted Rule of Civil Procedure 1506. Similar to the pre-complaint requirement codified in federal law, Rule 1506 provides in relevant part:In an action to enforce a secondary right brought by one or more shareholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth ... the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts.
 
 
 28
 "That portion of [Rule] 1506 requiring plaintiff to set forth 'the reason for not making any such efforts' is a restatement of existing law. Therefore, the case law in effect prior to the adoption of the rules of civil procedure would be applicable in interpreting this requirement." Kistler v. Faller, 8 D. & C.2d 682 (1956). The Pennsylvania trial court proceeded to cite Wilson and Evans for the proposition that "fraudulent acts" must be averred in order to excuse demand in a shareholder derivative suit. Id. at 685.
 
 
 29
 The Pennsylvania Supreme Court has not considered the substantive aspects of the procedural requirements embodied in Rule 1506 since the passage of the rule in 1952. Based on the Supreme Court's consistent interpretation of the law prior to passage of Rule 1506, we believe that the Pennsylvania Supreme Court would continue to apply the same substantive standards it did prior to 1952 when assessing whether the demand futility exception is satisfied.[8] We are confident in this view given the similarity between Rule 1506 and its precursor, Equity Rule 37 of the Pennsylvania Supreme Court.
 
 
 30
 In sum, in order to excuse demand under Pennsylvania law, the plaintiff must allege that a majority of the board of directors engaged in acts that are fraudulent; not that they merely exercised erroneous business judgment. Kelly, 234 Pa. at 427, 83 A. at 309. "[F]raud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." Moser v. DeSetta, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991) (citing Frowen v. Blank, 493 Pa. 137, 143, 425 A.2d 412, 415 (1981) (the sine qua non of actionable fraud is the showing of a deception)).
 
 A.
 
 31
 We will now apply the standards of Pennsylvania law to the averments set forth in Garber's amended complaint. Whether Garber has complied with the demand requirement "involves solely an examination of the amended complaint." Lewis v. Curtis, 671 F.2d 779, 784 (3d Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).
 
 
 32
 Garber acknowledges that he has not made a demand on Westinghouse or the individual defendants. Thus, we are not concerned with whether his demand was adequate, but rather whether Garber should be excused from making a proper demand because it would have been futile. The relevant portion of his amended complaint states that no demand has been made because each defendant is liable for their alleged misconduct.
 
 
 33
 Each individual defendant acted intentionally or recklessly, in making or approving the aforesaid improper incentive compensation awards, after being told that a major write-down could be pending. Each individual defendant acted intentionally or recklessly in approving or acquiescing in the improper aforesaid awards, after the write-down of $975 million was announced about a month later, and did nothing to cancel or recover the awards which were improper and which, further, were in violation of the [Key] Plan's provisions. The individual defendants could not and would not diligently prosecute this action because by doing so the individual defendants would be suing themselves for their own intentional or reckless misconduct in respect of the awards for which each is liable in this action to Westinghouse.
 
 
 34
 JA at 12 (Plaintiff's Amended Complaint p 18).
 
 
 35
 Our task is to determine whether this averment is sufficient to excuse demand as formulated by Pennsylvania law. On its face, the amended complaint does not allege that the individual defendants engaged in fraud or fraudulent acts. However, because Garber intimates that Westinghouse's directors have engaged in misconduct, we will look behind the form of the complaint to determine whether the averment is sufficient to excuse demand. See Glenn v. Kittanning Brewing Co., 259 Pa. 510, 103 A. 340 (1918). In doing so, we are compelled to apply the standards established by the Pennsylvania Supreme Court that "general allegations which do not set forth the particular circumstances [of fraud] are not sufficient" to excuse demand. Kelly, 234 Pa. at 427, 83 A. at 309.
 
 
 36
 Garber maintains that each individual defendant was aware of the $975 million write-down at the time of the incentive awards and that they proceeded with the awards despite this knowledge. There are two major facets to Garber's assertion that the individual defendants acted intentionally and recklessly. First, that the members of the Compensation Committee granted the incentive awards in violation of the Key Plan's limits. Second, that the awards were granted at a time when the members of the Compensation Committee knew that Westinghouse was about to reduce its 1990 net income by more than sixty percent. We must decide whether, assuming the facts alleged in the complaint as true, it alleges specific acts of fraud enough for us to determine that proper demand should have been excused.
 
 
 37
 Even if the individual members of the Compensation Committee knew that Westinghouse's consolidated net income before taxes and the awards would be sixty percent lower in 1990 as a result of the write-down, nothing specific in the complaint alleges that the Key Plan awards for 1990 violated the conditions of the Plan. Garber acknowledges that, if the full amount available under the Key Plan is not allocated in a given year, such portion of the balance as determined by the Compensation Committee may be carried forward and be available for incentive awards in any subsequent year. The amended complaint fails to specify the amount of awards provided in each individual year. Without more, it is impossible to determine whether the Compensation Committee carried forward surplus amounts from years prior to 1990. The amended complaint fails to specify how the conditions of the Key Plan were violated in the approval of incentive awards for 1990. It simply asserts that it was violated. Without more, Garber has failed to state with specificity any acts amounting to fraudulent activity by members of the Compensation Committee.
 
 
 38
 Garber's second major contention is that the individual defendants acted intentionally and recklessly in granting these awards in the context of the $975 million write-down by Westinghouse. Compensation awards are a matter of business judgment. While Westinghouse Credit Corporation suffered a huge loss in 1990, other divisions of Westinghouse Corporation may have been successful. Westinghouse argued on appeal that, even if a division is performing poorly, the Compensation Committee may believe that individual officers within that division should be rewarded, or that incentive awards are necessary to retain a high achiever. These are matters of business judgment and, without specific allegations of fraudulent acts, we are compelled to find under Pennsylvania law that demand should not be excused.
 
 
 39
 Searching throughout Garber's amended complaint, we fail to find any such specific allegations. Moreover, cases in which the Pennsylvania Supreme Court has held that demand on the corporation was not necessary have generally involved situations in which individual defendants personally profited from their own actions. For instance, in Glenn v. Kittanning Brewing Co., 259 Pa. 510, 103 A. 340, 342 (1918), a shareholder brought a derivative suit on behalf of the corporation against a member of the board to declare invalid 50 shares of stock issued to the board member. The shareholder did not make a demand on the corporation. In Glenn, the corporation's five member board of directors had split into two factions. The two person faction, including the plaintiff, had a majority of the corporation's stock, but the three person faction met during a regular meeting of the board and approved the sale of 50 new shares to one of the three, thus providing them with the majority of shares. In this instance, the Pennsylvania Supreme Court held that the fact that no demand was made on the corporation to take action was of no importance. "The wrongdoers in this case were the majority of the board of directors and as they committed the wrong complained of, it is scarcely reasonable to suppose demand upon them to bring corporate action would have produced results." 259 Pa. at 518, 103 A. at 343. Even though only one member of the board personally profited by gaining additional stock, all three members of the minority faction benefitted by gaining majority control of the corporation.
 
 
 40
 In Wilson v. Brown, 269 Pa. 225, 112 A. 1, 2 (1920), a shareholder filed a derivative suit on behalf of the corporation against a majority of the board of directors and others, seeking to enjoin the issuance of 340 shares of stock to the directors for their own personal use. The shareholder brought the derivative suit without making a demand on the corporation. In his complaint, the plaintiff specifically averred that the issuance of this stock was illegal and a fraud on other stockholders. The Pennsylvania Supreme Court held that in this instance, in which fraudulent acts prejudicial to the interests of the corporation had been committed, demand on the corporation was not required.
 
 
 41
 Unlike the shareholders in Glenn or Wilson, the shareholder in the present dispute fails to allege any acts of self-dealing by members of the Compensation Committee. Garber's amended complaint does not allege that the members of the Compensation Committee personally profited from any of the actions at issue in his complaint.
 
 
 42
 Nor does Garber allege any collusion between the two members of the board who did receive incentive awards and the five members of the Compensation Committee who approved of the awards. During this period, Paul Lego served as the Chairman and Chief Executive Officer of Westinghouse and Leonard Stern served as Senior Executive Vice-President. Both individuals were members of the board and employed as full time officers of Westinghouse. There is nothing in the complaint which alleges that Messrs Lego or Stern had any role whatsoever in the Compensation Committee's decision to grant them incentive awards. The Compensation Committee's decisions do not require the approval of the board as a whole, and there is no allegation that such approval took place.
 
 
 43
 Furthermore, Garber fails to allege any specific acts of fraud with regard to the four remaining individual defendants. In essence, he contends that a majority of the board either committed the alleged wrongdoing or were recipients of it. This includes the five members of the Compensation Committee which approved of the awards and the two recipients of awards. With regard to the remaining four members, however, Garber's only allegation is that they acquiesced in allowing the awards despite the write-down. However, under the Key Plan, the board is not required to approve of the Compensation Committee's determination of incentive awards. His amended complaint lacks any mention of fraud or self-dealing with regard to these individual defendants.
 
 
 44
 Garber also contends that demand was futile because the defendants would not pursue this cause of action because to do so "would be suing themselves." JA at 12 (Plaintiff's Amended Complaint p 18). But merely charging that demand was futile because board members would not approve of litigation to repeal actions which they had approved, without more, does not amount to an allegation of fraud and thus does not excuse Garber from the substantive requirements necessary to comply with Pennsylvania Rule 1506.
 
 
 45
 Lastly, Garber asserts that the awards constituted such an abuse of the Key Plan and the other plans as to amount to corporate waste. However, a charge of corporate waste which does not include allegations of fraud or self-dealing does not meet the degree of specificity required under Pennsylvania law to excuse demand. What a corporation decides to do with its assets is primarily a matter of business judgment. The demand futility exception under Pennsylvania Rule 1506 does not provide the authority for shareholders to bring suit simply because they disagree with the board of directors' business judgment. Without specific allegations of fraudulent activity engaged in by a majority of the board of directors, Garber's amended complaint fails to set forth sufficient reasons to excuse demand.
 
 B.
 
 46
 In his brief and argument before this Court, Garber disagrees with this formulation of Pennsylvania law. In the alternative, he asserts that under Pennsylvania law, demand upon Westinghouse's directors is not required when the pleadings show that a majority of board members were interested persons in that they either received the bonuses or approved of them. In asserting this argument, he relies upon this Court's decision in Lewis v. Curtis, 671 F.2d 779 (3d Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).
 
 
 47
 In Lewis, this Court considered a shareholder derivative suit against the board of directors of Hammermill Paper Company, a Pennsylvania corporation. Like the present dispute, the shareholder in Lewis made no demand on the board prior to filing the complaint. This Court held that:
 
 
 48
 [c]ourts will excuse the derivative plaintiff from the demand requirement when his complaint alleges that a majority of the directors have participated in the underlying wrongdoing or that the board is controlled by the alleged wrongdoers.
 
 
 49
 671 F.2d at 784 (construing Untermeyer v. Fidelity Daily Income Trust, 580 F.2d 22, 23 (1st Cir.1978); Cathedral Estates v. Taft Realty Corp., 228 F.2d 85, 88 (2d Cir.1955)). Under Lewis, demand is not required where "the allegations of the complaint permit the inference by the court that the directors upon whom demand would be made lack the requisite disinterestedness to determine fairly whether the corporate claim should be pursued." Id. 671 F.2d at 785.
 
 
 50
 In the present dispute, Garber asserts that in addition to the two members of the board who received incentive awards, the five members of the board who serve on the Compensation Committee participated in the awards, so that a total of seven of the then eleven members of the board either committed the alleged wrongdoing or were recipients of it. As a result, he contends that demand should have been excused because a majority of the board participated in the alleged wrongdoing, justifying the inference that the majority of the directors lacked the requisite disinterestedness to determine fairly whether the claim on behalf of the corporation should be pursued.
 
 
 51
 However, this is not the standard which should be applied. In Kamen, the Supreme Court determined that the demand doctrine is "a matter of 'substance,' not 'procedure.' " 500 U.S. at ----, 111 S.Ct. at 1716 (quoting Daily Income Fund Inc. v. Fox, 464 U.S. 523, 543-44, 104 S.Ct. 831, 842, 78 L.Ed.2d 645 (1984)). Because corporations are creatures of state law, and private parties enter into corporate relationships with the expectation that state law will govern their rights and obligations, this aspect of state law, rather than a uniform federal rule of demand, should "determine who has the power to control corporate litigation." Id. 500 U.S. at ----, 111 S.Ct. at 1719. In light of Kamen, we are compelled to rely on the substantive requirements of the futility exception to the demand rule as defined by Pennsylvania law. In Lewis, this Court established a legal standard for demand futility without significant reference to what Pennsylvania law requires. In its effort to develop a uniform standard for demand futility, this Court adopted an approach comparable to what many other federal courts did prior to 1991, by examining federal common law. The Supreme Court in Kamen rejected this type of approach. We hold that to the extent that the demand futility requirements articulated in Lewis place a lesser burden on the shareholder than the demand futility requirements under Pennsylvania law, Lewis has been superseded by Kamen.[9]
 
 
 52
 Garber makes an alternative argument that acts of fraud need not be alleged to satisfy the futility exception to the demand requirement. In doing so, he cites Passmore v. Allentown & Reading Traction Co., 267 Pa. 356, 110 A. 240 (1920), for the proposition that "insolvency and fraud" need not be averred to excuse demand. Appellant's Reply Brief at 19. In Passmore, the Pennsylvania Supreme Court considered whether demand should have been excused in a case involving a shareholder in the Kutztown & Fleetwood Street Railway Company ("Kutztown"), who sought to bring suit on behalf of Kutztown against Allentown & Reading Traction Co. ("Allentown"). The corporations had agreed that Allentown would pay Kutztown a dividend equal to its dividend in consideration of a lease. Allentown proceeded to take large expenses resulting in a smaller dividend, which plaintiff questioned. The court held that "[i]t was incumbent on [plaintiff] to set forth facts necessary to give him standing to assert rights that are normally enforced by the corporation." 267 Pa. at 358, 110 A. at 241. "Before a stockholder may intervene to enforce rights, every effort should be made to cause the directors to act." 267 Pa. at 359, 110 A. at 241. The court's statement that "[i]nsolvency and fraud need not be averred" is made in the context of the types of allegations shareholders need to provide the corporation in order to get the corporation to act. Id. The statement does not relate to the type of averment necessary to excuse demand on the corporation. Garber misstates Pennsylvania law as to the standard which should be applied in determining whether demand is excused. We find that Pennsylvania courts will excuse demand only upon specific allegations of acts "manifestly the result of fraud and not erroneous judgment." Wolf, 195 Pa. at 95, 45 A. at 937. As explained in part III-A, we hold that his complaint fails to satisfy this criteria.
 
 
 53
 In requiring that a shareholder plaintiff aver acts of fraud in order to excuse demand, Pennsylvania law may be considered more strict than that of other states. But as the Supreme Court held in Kamen, it is state law that federal courts must examine in determining whether demand would be futile.
 
 IV.
 
 54
 For the foregoing reasons, we hold that Garber failed to set forth sufficient pleadings to excuse demand pursuant to Federal Rule 23.1 and Pennsylvania Rule 1506. We will affirm the order of the district court dismissing the amended complaint.
 
 
 
 [1]
 In Borelli v. City of Reading, 532 F.2d 950 (3d Cir.1976), we held that the district court's order dismissing the plaintiff's complaint without prejudice was not appealable. In Borelli, we recognized an exception to this rule when the plaintiff can not amend its complaint or declares its intention to stand on the complaint. At this point the district court's order becomes final and appealable. 532 F.2d at 951-52. While Garber's complaint was dismissed without prejudice, we find that his appeal fits within the exception recognized in Borelli. In the October 2, 1992 order dismissing Garber's complaint without prejudice, the district court judge included a handwritten addendum: "The Clerk shall mark this case CLOSED." Joint Appendix at 67. Garber's brief submitted to this Court asserts that his appeal is from a "final order" of the district court. Appellant's Brief at 2. The court's handwritten addendum enforces our conclusion that plaintiff had no desire to amend the dismissed complaint. Moreover, the briefs submitted by the parties and the oral argument in this Court did not discuss the possibility of a further amendment to the complaint. We find that the district court's dismissal of the complaint was a final order. Accordingly, we have decided this dispute on the merits
 
 
 [2]
 One member of the Compensation Committee and board of directors named in this suit, John Carter, is now deceased. The suit substitutes his estate as a defendant in this action
 
 
 [3]
 Westinghouse does not deny this figure but argues that the relevant amount for purpose of this dispute is the level of awards provided through the Key Plan for the year 1990, not the combination of the incentive plans for the three year period ending in 1990
 
 
 [4]
 The district court based this finding on an affidavit submitted by Westinghouse in support of its motion for partial summary judgment. This motion was withdrawn by Westinghouse prior to the district court's ruling on the motion to dismiss. Nonetheless, plaintiff has failed to dispute this finding of the district court
 
 
 [5]
 Westinghouse Credit Corporation is a division of Westinghouse Electric Corporation
 
 
 [6]
 In determining the amount of the consolidated net income for the purpose of calculating the amount of funds available under the Key Plan, the Compensation Committee is permitted to exclude any part of any item of unusual or nonrecurring income or loss not arising from the ordinary course of business. However, neither party asserts that the February 27, 1992 write-down of $975 million in Westinghouse's net income amounted to an unusual or nonrecurring loss
 
 
 [7]
 Equity Rule 37 of the Pennsylvania Supreme Court stated in pertinent part:
 Every stockholder's bill brought against a corporation and other parties, founded on rights which should have been asserted by the corporation itself, must ... set forth, with particularity, the efforts made to secure action on the part of the managing directors, trustees or stockholders (whichever course is necessary), and their reasons for refusing to act, or plaintiff's reasons for not making the efforts above specified.
 The Rules of Equity Practice were adopted by the Pennsylvania Supreme Court on May 30, 1924. The preface states:
 And now, May 30th, 1924, for the purpose of making the practice and procedure in equity conform as nearly as may be to the legislature's requirements in regard to practice and procedure at law, it is ordered that on and after January 1st, 1925, the Rules of Equity Practice, in all courts of equity in the Commonwealth of Pennsylvania, shall be as hereinafter set forth ...
 Rules of Equity Practice, reprinted in George M. Henry, Equity Jurisdiction and Practice in Pennsylvania 291 (1933).
 
 
 [8]
 Two decisions by Pennsylvania trial courts have construed Rule 1506 not to require specific allegations of fraud. In Smith v. Brown-Borhek Co., 29 D. & C.2d 684 (1963), aff'd on other grounds, 414 Pa. 325, 200 A.2d 398 (1964) the court held that no demand was necessary where, although the plaintiff did not aver fraud, the court believed the corporation's actions were so suspect as to amount to fraud. In Korman Corporation v. Franklin Town Corporation, 34 D. & C.3d 495 (1984), the court found four of the five directors of defendant corporation were employees or representatives of the majority shareholders and were dominated or controlled by them, rendering the board incapable of independent action. In Korman, the plaintiff had averred that the majority shareholders committed an act of self-dealing when they issued additional stock to themselves without consideration. Our review of these two cases does not change our view that the Pennsylvania Supreme Court would continue to apply the pre-1952 standards
 
 
 [9]
 Westinghouse Electric Corporation is incorporated in Pennsylvania. Defendants suggest that to the extent that Pennsylvania law is not sufficiently developed in the area of derivative suits and demand futility, this Court should consider Delaware corporate law. We find that Pennsylvania law is sufficiently established in this area. Therefore, this case does not decide the legal precepts that federal courts should apply in deciding disputes involving corporations incorporated in states other than Pennsylvania. See Blasband v. Rales, 971 F.2d 1034 (3d.Cir.1992) (under Kamen, Delaware law governs the substantive requirements of shareholder's claim that demand should be excused in derivative suit on behalf of corporation incorporated in Delaware)