[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10466
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-22309-MGC

CARMEN MARIA GARCIA,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 3, 2020)

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Carmen Garcia appeals the district court's order affirming the Administrative Law Judge's (ALJ) denial of her application for supplemental security income (SSI). On appeal, Ms. Garcia argues that the ALJ (1) failed to articulate the weight assigned to her psychiatrist's treatment notes and rejected the same psychiatrist's medical opinions without good cause; (2) failed to properly assess Ms. Garcia's paragraph B criteria ratings and residual functional capacity (RFC); and (3) failed to properly assess the credibility of her subjective statements and complaints. After careful review, we affirm.

## I. STANDARD OF REVIEW

We review de novo the ALJ's application of legal principles, and we review the ALJ's resulting decision "to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). Substantial evidence is more than a scintilla, but "less than a preponderance." *Id.* It is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). This limited review does not permit us to decide the facts anew, make credibility determinations, or reweigh the evidence. *Moore*, 405 F.3d at 1211.

## II. DISCUSSION

### A. Dr. Tauler's Medical Opinions

Ms. Garcia argues that the ALJ failed to properly consider the medical opinions of her treating psychiatrist Dr. Antonio Tauler, and that the ALJ lacked good cause to accord less than substantial or controlling weight to Dr. Tauler's opinions. We disagree.

Eligibility for SSI requires the claimant to be disabled. 42 U.S.C. § 1382(a)(1)–(2). In assessing whether the claimant is disabled, the ALJ will consider medical opinions, which are statements from physicians, psychologists, and other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments and what the claimant can still do despite the impairments. *Winschel*, 631 F.3d at 1178–79.

In determining what weight to give a medical opinion, the ALJ considers several factors, including: (1) the examining relationship; (2) the treatment relationship, including the length and nature of the relationship; (3) the supportability of the opinion; and (4) the consistency of the opinion with other evidence. 20 C.F.R. § 404.1527(c)(1)–(4) (2016).[1] Generally, the Social Security Administration (SSA) gives "more weight" to an opinion from a treating source

---

[1] All citations to the C.F.R. will be to the 2016 version unless otherwise noted.

because these sources are "likely to be the medical professionals most able to provide a detailed, longitudinal picture" of the claimant's medical impairment. *Id.* § 404.1527(c)(2).  Indeed, if the SSA finds that a treating source's opinion on the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the SSA will give the opinion "controlling weight."  *Id.*

And even where the treating physician's opinion is not entitled to controlling weight, it must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Winschel*, 631 F.3d at 1179.  We have found good cause to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*

The ALJ must also clearly articulate his reasons for giving less weight to a treating physician's opinion, and the failure to do so is reversible error.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" that leaves the district court or us with insufficient information to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395

F.3d 1206, 1211 (11th Cir. 2005) (per curiam).  We will reverse only if the ALJ "fails to state with at least some measure of clarity the grounds for his decision." *Winschel*, 631 F.3d at 1179 (internal quotation mark omitted).

Here, the ALJ did not commit reversible error in his articulation of the weight accorded to Dr. Tauler's treatment notes.  Although the ALJ did not refer to each of Dr. Tauler's treatment notes, his decision illustrates that he considered the content of the notes and explained "with at least some measure of clarity" the grounds for discounting Dr. Tauler's medical opinions.  *Id.*  Thus, we find no reversible error in this regard.

Further, the record reflects that the ALJ had good cause to give Dr. Tauler's opinions less than substantial or considerable weight.  The ALJ acknowledged Dr. Tauler's treating relationship with Ms. Garcia but found that his opinions were exaggerated and inconsistent with his own treatment notes and other record evidence.  For instance, Dr. Tauler's medical source statements provided that Garcia was utterly unable to function independently or socialize, but the treatment notes, as well as an August 2013 interview with Ms. Garcia's brother and a September 2013 psychological examination by Dr. Wanda Romero, showed that she could do so to a greater extent than what Dr. Tauler described.  As the ALJ noted, the record evidence showed that she was able to care for her three grandchildren, socially interact with family, attend social functions, and

independently make appointments. Thus, the ALJ had good cause not to give substantial or considerable weight to Dr. Tauler's opinions, and substantial evidence supported his decision. *Id.* Accordingly, we affirm in this respect.

**B. Paragraph B Criteria and Residual Functional Capacity**

Ms. Garcia further claims that the ALJ failed to properly assess her paragraph B criteria ratings and RFC at steps three and four of the sequential evaluation. Upon review, we conclude that the ALJ's determinations were supported by substantial evidence.

Social Security regulations outline a five-step, sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The ALJ must evaluate whether: (1) the claimant engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the severe impairment meets or equals an impairment in the Listing of Impairments; (4) the claimant has the RFC to perform past relevant work; and (5) in light of the claimant's RFC, age, education, and work experience, there are other jobs the claimant can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). If the ALJ determines that the claimant is not disabled at any step of the evaluation process, the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Here, the ALJ found at step one that Ms. Garcia had last engaged in substantial gainful activity in August 2013. At steps two and three, the ALJ found

that Ms. Garcia's major depressive disorder was a severe impairment, but not one that met or equaled the level of severity of a listed impairment. At step four, the ALJ found that Ms. Garcia had the RFC to perform simple work that requires limited personal interaction. Finally, the ALJ determined at step five that although Ms. Garcia was unable to perform any of her past relevant work, there were jobs she could perform in the national economy. Therefore, the ALJ concluded that Ms. Garcia was not disabled.

Ms. Garcia contests the ALJ's findings as to her: (1) Paragraph B criteria ratings at step three; and (2) RFC at step four. We address each in turn.

### 1. Paragraph B Criteria

At step three, a claimant is conclusively presumed to be disabled if she meets or equals the level of severity of a listed impairment, or Listing. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). To meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify, no matter how severely it meets some of the criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The claimant bears the burden of demonstrating that she meets a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To meet Listing 12.04 for affective disorders, a claimant must meet the requirements in both paragraphs A and B, or meet the requirements in paragraph C.

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.04.  Paragraph B requires that the medically documented persistent syndrome result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  *Id.* § 12.04(B).  "Marked" means "more than moderate but less than extreme," and occurs when the degree of limitation seriously interferes with a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis."  *Id.* § 12.00(C).

Here, the ALJ reviewed each of the four paragraph B functional limitation criteria and concluded that Ms. Garcia did not have marked limitations or repeated episodes of decompensation on at least two of the criteria.  First, the ALJ determined that Ms. Garcia had only mild restriction of her daily living activities because she had at least some ability to cook, garden, clean, and care for her grandchildren.  Second, the ALJ determined that Ms. Garcia had moderate restriction of her social functioning because despite her complaints of social isolation, she demonstrated the ability to use public transit and to socialize with her family.  Third, although Ms. Garcia reported difficulties in maintaining concentration, persistence, or pace, the ALJ found her difficulties to be only moderate because she exhibited at least some ability to concentrate when

8

examined. This finding comported with Dr. Romero's opinion that while Ms. Garcia had some trouble completing complex tasks and concentrating, she was able to follow simple instructions and demonstrated at least fair ability to concentrate. Last, the ALJ found that Ms. Garcia had not suffered from repeated and extended episodes of decompensation.

The record reflects, therefore, that the ALJ considered Ms. Garcia's testimony and weighed it against other record evidence in finding that she did not have marked limitations or repeated episodes of decompensation on at least two paragraph B criteria. While some evidence in the record may have supported more severe limitations, the ALJ determined that the record as a whole weighed against Ms. Garcia's claims. Because substantial evidence supported that determination, the ALJ did not err on step three.

### 2. Residual Functional Capacity

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238. The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* The claimant's RFC is then used to determine her capability for performing various designated levels of work (sedentary, light, medium, heavy, or very heavy). *See* 20 C.F.R. § 404.1567. Here, after considering the record as a whole, the ALJ determined that Ms. Garcia could perform work at all exertional

9

levels, with the nonexertional limitation that she could perform only simple work requiring limited personal interaction.

This determination was supported by substantial evidence. The ALJ's decision reflects careful consideration of the August 2013 interview with Ms. Garcia's brother, Ms. Garcia's own testimony, the content of her treatment records, and the effectiveness of medication in controlling her impairments. Again, while some evidence may have weighed against the ALJ's determination of Ms. Garcia's RFC, substantial evidence supported the ALJ's conclusion when considering the record as a whole. Accordingly, we affirm in this respect as well.

## C. Ms. Garcia's Credibility

Ms. Garcia argues last that the ALJ failed to properly assess her credibility. Yet upon review, we determine that the ALJ's assessment of Ms. Garcia's credibility was supported by substantial evidence.

A claimant attempting to establish disability through his or her own testimony of subjective symptoms must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). The ALJ may

discredit the claimant's subjective testimony, but "he must articulate explicit and adequate reasons for doing so." *Id.*

Here, substantial evidence supported the ALJ's determination that Ms. Garcia's subjective complaints about her symptoms and limitations were not fully credible. After comparing Ms. Garcia's testimony with evidence that she had performed a wide range of daily activities, had cared for her grandchildren, and had no psychiatric hospitalizations, the ALJ found that the objective evidence was inconsistent with Ms. Garcia's testimony and that her impairments were less severe than she claimed. Because the ALJ articulated explicit and adequate reasons for discrediting Ms. Garcia's testimony, his decision to grant little probative weight to her testimony was not reversible error. *Id.* Accordingly, we affirm the ALJ's decision.

**AFFIRMED.**