WATERSIDE PARTNERS, Plaintiff Below, Appellant,

v.

C. BREWER AND COMPANY, LTD., C. Brewer Homes, Inc., John W.A. Buyers, Kent T. Lucien, James S. Andrasick, James H. Case, Ralph C. Hook, Mauna Loa Macadamia Partners, L.P., and Mauna Loa Resources, Inc., Defendants Below, Appellees.

No. 142, 1999.

Supreme Court of Delaware.

Submitted: Oct. 26, 1999.
Decided: Nov. 1, 1999.

Joseph A. Rosenthal and Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware, and Sidney B. Silverman, (argued) and H. Adam Prussin, Silverman, Harnes, Harnes, Prussin & Keller, New York City, for appellant.

Rodman Ward, Jr., (argued) and Stephen D. Dargitz, Skadden, Arps, Slate, Meagher & Flom, Wilmington, Delaware, for appellees.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

PER CURIAM:

This is an appeal from a decision of the Court of Chancery denying the Plaintiff an award of attorneys' fees arising out of a

mooted derivative action. We conclude that the Court of Chancery correctly determined that the Plaintiff's successful efforts in a related proxy contest that served to moot the derivative action did not provide a basis for the award of fees and expenses in the derivative action. Accordingly, we affirm.

## I.

The Plaintiff, Waterside Partners ("Waterside"), is the owner of 1000 units of Mauna Loa Macadamia Partners, L.P. ("Mauna Loa" or the "Partnership"), a Delaware limited partnership, the partnership units of which are listed for trading on the New York Stock Exchange. Mauna Loa's general partner, Mauna Loa Resources, Inc., is controlled by an investment group headed by John W.A. Buyers (the "Buyers Group").

The Buyers Group also owns a 70.1% interest in C. Brewer Homes, Inc. ("Homes"), a Hawaiian real estate development company. On November 6, 1997, the Buyers Group proposed a merger of Homes into Mauna Loa (the "Merger Proposal"), pursuant to which each share of Homes would be exchanged for 0.667 units of Mauna Loa, and the Partnership would assume all of Home's business as well as its debt. The Merger Proposal required the approval of a majority of the outstanding limited partnership units.

On January 2, 1998, Waterside filed a derivative action in the Court of Chancery, challenging the terms of the Merger Proposal on the grounds that it was unfair to Mauna Loa and was "designed strictly to benefit" Homes and the Buyers Group. Specifically, the complaint alleged that Homes was on the verge of bankruptcy and that the Merger Proposal was merely a device to rescue Homes and advance the financial interests of several of the individual Defendants. On June 8, 1998, the Court of Chancery denied a motion by Waterside for expedited proceedings and the litigation essentially lay dormant.

On June 9, 1998, and June 17, 1998, however, Channing Lushbough, Waterside's general partner, wrote to Mauna Loa's unitholders, urging them to vote against the Merger Proposal. Lushbough made no mention of the pending derivative litigation. Although the management of Mauna Loa wrote in response to these letters, urging the unitholders to approve the Merger Proposal, as the Court of Chancery noted, Lushbough's letters "turned the tide that had been running in favor of the Merger Proposal." At the unitholder meeting on June 26, 1998, the Merger Proposal was submitted to a vote and was defeated.

The rejection of the Merger Proposal by Mauna Loa's unitholders mooted Waterside's claims in its derivative action. On July 14, 1998, the Court of Chancery issued an order dismissing the action but retaining jurisdiction for the purpose of determining Waterside's fee application. In support of its motion for attorneys' fees, Waterside claimed that the Merger Proposal, had it been approved, would have produced adverse results for Mauna Loa.

The Court of Chancery denied Waterside's application for attorneys' fees. The court concluded that Delaware law did not support an award of attorneys' fees to a plaintiff whose litigation had accomplished nothing but had become moot because of a parallel, but independent, proxy contest.

## II.

The standards controlling the award of counsel fees in the realm of shareholder litigation are fairly well established. *Tandycrafts, Inc. v. Initio Partners,* Del.Supr., 562 A.2d 1162, 1164 (1989); *United Vanguard Fund, Inc. v. Takecare, Inc.,* Del.Supr., 693 A.2d 1076, 1079 (1997). Fee shifting is recognized in corporate litigation where a plaintiff's litigation efforts have resulted in the creation of a common fund, *Weinberger v. UOP, Inc.,* Del.Ch., 517 A.2d 653, 654 (1986), or conferred a benefit on the corporation, *Chrysler Corp. v. Dann,* Del.Supr., 223 A.2d 384, 386

(1966); *Tandycrafts,* 562 A.2d at 1164–65. Fee shifting may also be ordered where litigation is rendered moot through resulting action by the defendants. In the latter instance, the plaintiff must establish that: (i) the suit was meritorious when filed; (ii) the claim was rendered moot by action taken by the defendants before a judicial resolution of the matter producing a benefit to the corporation or its stockholders; and (iii) such action and the resulting benefit were causally related to the lawsuit. *United Vanguard Fund,* 693 A.2d at 1079.

An issue that has remained unaddressed until now is posed by the circumstances of this case: whether a unitholder (or shareholder) who launches a proxy contest in conjunction with a derivative action can recover its expenses and attorneys' fees where a corporate benefit resulted from the proxy contest rather than the litigation. Waterside contends that the Court of Chancery applied the fee shifting criteria too narrowly and failed to recognize, and credit, the relationship between the first filed litigation and the resulting proxy contest.

This argument, however, is not convincing. Plaintiffs' argument that fee shifting should be permitted for a common benefit created outside the litigation context has no limiting principle. Fee shifting is the exception rather than the rule in corporate litigation and the establishment of a nexus between the litigation, itself, and the claimed corporate benefit is a *sine qua non.* Cf. *United Vanguard Fund,* 693 A.2d at 1079.

To permit the award of litigation fees for efforts outside the litigation would entangle courts in the "*ex post* pricing of 'volunteer' informational services to corporations." *Bird v. Lida, Inc.,* Del.Ch., 681 A.2d 399, 407 (1996). This clearly undesirable result can be avoided by strict adherence to the causal nexus requirement adopted by the Court of Chancery in this case.

The decision of the Court of Chancery is AFFIRMED.