Carl J. JERUE, Jr. and Ernie Demoski, Sr., as individual shareholders and on behalf of Ingalik, Incorporated, and Ingalik, Incorporated, Appellants,

v.

Gloria MILLETT, Theodore Kruger, Jr., Kenneth W. Chase, Shannon F. Chase, Carl Jerue, Sr., Terrence Wharton, Jr., and John Does 1–5, Appellees.

No. S–9076.

Supreme Court of Alaska.

March 28, 2003.

Peter J. Aschenbrenner and Sheila Doody Bishop, Aschenbrenner Law Offices, Inc., Fairbanks, for Appellants.

Robert K. Reiman, Law Offices of Robert K. Reiman, Anchorage, for Appellees.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION *

EASTAUGH, Justice.

## I. INTRODUCTION

This appeal concerns attorney's fees and indemnification disputes arising after the superior court dismissed a derivative suit brought by shareholders of an Alaska Native Claims Settlement Act (ANCSA) village corporation. The plaintiffs sued without first making the pre-suit demand Alaska law requires. After the superior court dismissed the complaint for mootness, both sides sought attorney's fees and costs. Concluding that the shareholders did not prove that a pre-suit demand was excused, the superior court held that they were not prevailing parties and denied their attorney's fees motion. Finding that the defendant directors were prevailing parties, the court awarded them Alaska Civil Rule 82 attorney's fees against the plaintiff shareholders, and ordered the corporation to indemnify them under AS 10.06.490(c). Because the superior court did not err in holding that the shareholders did not prove that a demand was excused, we affirm the denial of the plaintiffs' fees request. But because the directors did not establish that they were Rule 82 prevailing parties, we vacate their attorney's fees award. And because they did not establish that they were "successful" litigants, we hold

---

* This opinion replaces Opinion No. 5650 issued December 13, 2002. In response to appellees' petition for rehearing, the court adds footnote 56.

that they were not entitled to indemnification under AS 10.06.490(c).

## II. FACTS AND PROCEEDINGS

Carl J. Jerue, Jr. and Ernie Demoski, Sr. ("plaintiff shareholders") are shareholders of Ingalik, Incorporated, the ANCSA village corporation for the Native village of Anvik. Gloria Millett, Kenneth Chase, Shannon Chase, and Ted Kruger, Jr. ("defendant directors") were members of Ingalik's board of directors as of January 1998. On January 12, 1998 the Alaska Department of Commerce and Economic Development issued the corporation a Certificate of Involuntary Dissolution, citing the corporation's failure to file a biennial report or pay taxes.

On January 22, 1998 the plaintiff shareholders filed a derivative complaint against the defendant directors, alleging financial mismanagement and other wrongdoing. The complaint asked the court to compel the defendant directors to hold an annual shareholders' meeting to elect a new board of directors; to appoint Jerue as an interim director with authority to take whatever action was necessary to reinstate the corporation; and to issue a temporary restraining order prohibiting the defendant directors from "winding up" the corporation's affairs and distributing any corporate assets. Summonses were issued for the individual defendants on January 22, 1998.

In January Ingalik made reinstatement efforts; it returned to good standing with the state and was reinstated on February 6, 1998.

On April 6 the directors moved to dismiss. They argued that the plaintiff shareholders had not demonstrated that their failure to make a demand on the board was excused. They also argued that the complaint was moot because the corporation had been reinstated, it had scheduled an annual meeting, and its reinstatement meant its assets would not be distributed.

Ingalik held an annual shareholders' meeting on April 25. The shareholders reorganized the board by electing new directors, including both plaintiff shareholders; only one incumbent, defendant Kruger, was re-elected. The new board met the next day and passed resolutions authorizing the corporation to join the lawsuit as a party plaintiff and denying indemnification to the defendant directors.

The plaintiff shareholders then asked the superior court to join Ingalik as a party plaintiff; the court did so on June 8. But on the same day, it also entered an order dismissing the derivative suit with prejudice. It retained jurisdiction for the purpose of determining prevailing party status and awarding costs and attorney's fees.

The defendant directors moved for a Civil Rule 82 fees award against the plaintiff shareholders individually; they also sought an order requiring Ingalik to indemnify their litigation costs under AS 10.06.490(c). The plaintiff shareholders and Ingalik (the "plaintiffs") opposed these requests and, claiming that they were the prevailing parties because the requested relief was achieved, cross-moved for an award of fees against the defendant directors under Civil Rules 23.1(j) and 82(a). Both sides relied on numerous documents in addition to their pleadings.

Following oral argument, the superior court ruled for the defendant directors on the fees and costs motions. It reasoned that the plaintiff shareholders had the burden of proving that they were excused from making the formal pre-suit demand Civil Rule 23.1(c) requires; it also reasoned that the directors' alleged practices gave rise to "any number of conflicting inferences" and "by no means" demonstrated that a majority of the directors were implicated in an injury to the corporation. It therefore concluded that a demand was not excused, that the defendant directors were entitled to dismissal under Civil Rule 23.1(d), and that the defendant directors were the prevailing parties under Civil Rule 82. It also concluded that the defendant directors' prevailing party status entitled them to full indemnification from the corporation under AS 10.06.490(c).

The judgment awarded the defendant directors $26,656.96 against Ingalik under AS 10.06.490(c) to indemnify their attorney's fees and costs, and $3,804.16 against Jerue and Demoski individually as costs and Rule 82 attorney's fees. The award against Ingalik

included the amount awarded against the individual plaintiff shareholders, and the judgment prevented the directors from recovering more than the total amount awarded against Ingalik.

Ingalik and the plaintiff shareholders argue on appeal that the superior court erred by (1) failing to award them costs and fees under Civil Rules 82 and 23.1(j) and AS 10.06.435(j); (2) granting costs and Civil Rule 82 attorney's fees to the defendant directors against the plaintiff shareholders; and (3) requiring the corporation to indemnify the defendant directors under AS 10.06.490(c).

## III. DISCUSSION

### A. Standard of Review

■ We apply our independent judgment to questions of statutory interpretation[1] and must "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[2]

■ For reasons we discuss in Part III. B.2, we review for abuse of discretion the superior court's fact-based determination that the plaintiff shareholders did not prove that a pre-suit demand was excused.[3] The legal effect of that finding on the plaintiffs' motion for an award of litigation expenses

presents a question of law which we review by applying our independent judgment.

Because it presents questions of law, we apply our independent judgment in reviewing the ruling that, because the plaintiff shareholders failed to prove that a demand was excused, the defendant directors were the prevailing parties under Rule 82(a).[4] A determination of prevailing party status under Rule 82(a) will not be overturned unless it is manifestly unreasonable.[5] We apply our independent judgment in reviewing the ruling that the defendant directors' prevailing party status entitled them to AS 10.06.490(c) indemnification, because this ruling presents a question of law.

### B. Denial of Costs and Attorney's Fees to the Plaintiffs

Jerue, Demoski, and Ingalik first argue that it was error not to award them costs and attorney's fees against the defendant directors.[6] They reason that they secured the relief their complaint sought, rendering the derivative suit "successful"; this made them, not the directors, the prevailing parties, entitling them to recover costs and fees from the defendant directors under Civil Rules 82(a) and 23.1(j) and AS 10.06.435(j).[7]

---

1. *Brandon v. State, Dep't of Corr.*, 938 P.2d 1029, 1031 (Alaska 1997) (citation omitted).

2. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

3. *Garber v. Lego*, 11 F.3d 1197, 1200 (3d Cir. 1993).

4. *Mathis v. Sauser*, 942 P.2d 1117, 1120 (Alaska 1997) (citation omitted).

5. *Ashley v. Baker*, 867 P.2d 792, 796 (Alaska 1994) (citation omitted).

6. We initially reject defendant directors' argument that because plaintiffs are appealing the October 1998 prevailing-party ruling and not the merits of the June 1998 order dismissing their complaint, they have waived their right to challenge the ruling that they did not prove that demand was excused. The June 8, 1998 dismissal order retained jurisdiction to determine prevailing party status and to award costs and fees. Plaintiffs correctly argue that they could wait and appeal the superior court's final judgment, which was first entered on October 7, 1998. Plaintiffs did not appeal (and had no reason to

appeal) the underlying dismissal because the goals of their lawsuit had been achieved.

7. The minutes of the April 26, 1998 board meeting indicate that the Anvik Tribal Council, a nonparty, initially paid some or all of plaintiff shareholders' attorney's fees. Defendant directors have not argued that this circumstance precludes plaintiff shareholders' Rule 82 claim.

But circumstances bearing on how legal fees and costs were to be paid may be relevant for other reasons we discuss below. Plaintiffs' counsel submitted affidavits and attachments demonstrating that legal fees totaling $26,073 had been incurred by the "plaintiffs" as of June 30, 1998. Of that, the Anvik Tribal Council had paid fees totaling $15,000, plaintiffs' counsel's law firm had advanced an additional $7,670.70 in services, and Ingalik had agreed to pay for services, worth $4,341, the law firm provided after Ingalik sought to became a party plaintiff. The fees incurred by or for Jerue and Demoski individually thus totaled $22,670.70. By resolution, Ingalik's new board agreed to reimburse the Anvik Tribal Council and the law firm for the legal services provided to Jerue and Demoski.

Alaska Statute 10.06.435(j) and Alaska Civil Rule 23.1(j) permit awards of expenses, including attorney's fees, to derivative suit plaintiffs. The statute and the rule are identical. They provide in pertinent part that "[i]f the derivative action is successful, in whole or in part, or if anything is received as a result of the judgment, compromise, or settlement of that action, the court may award to the plaintiff or plaintiffs reasonable expenses, including reasonable attorney fees." [8]

■ Civil Rule 23.1(j) is a fee-sharing rule. It requires the corporation benefitted by a derivative suit to share the expense incurred by the plaintiff shareholders in achieving the benefit for the corporation.[9] It reaches this result by requiring the corporation to reimburse the plaintiff shareholders. Because it is a fee-sharing rule, Rule 23.1(j) does not give the corporation itself a claim for fees or provide for an award against individual defendants.[10] Moreover, here Ingalik's successor board adopted a resolution authorizing Ingalik to reimburse "all legal fees and costs" incurred in behalf of Jerue and Demoski. Because the corporation has voluntarily agreed to share any litigation expense incurred by or for Jerue and Demoski individually, Rule 23.1(j) has no further direct application to this case: Its fee-sharing purpose was achieved without court order.

To illustrate the true nature of Ingalik's fees claim, we assume that a Rule 23.1(j) fees award could indirectly give rise to a corporate claim against derivative suit defendants.

8. Alaska Civil Rule 23.1(j) provides:
   If the derivative action is successful, in whole or in part, or if anything is received as a result of the judgment, compromise, or settlement of that action, the court may award to the plaintiff or plaintiffs reasonable expenses, including reasonable attorney fees, and shall direct an accounting to the corporation for the remainder of the proceeds. This subsection does not apply to a judgment rendered only for the benefit of injured shareholders and limited to a recovery of the loss or damage sustained by them.
   The text of AS 10.06.435(j) is identical.

9. It appears that Alaska Civil Rule 23.1(j) is modeled after New York Business Corporation Law § 626(e), which provides:
   If the action on behalf of the corporation was successful, in whole or in part, or if anything was received by the plaintiff or plaintiffs or a claimant or claimants as the result of a judgment, compromise or settlement of an action or claim, the court may award the plaintiff or plaintiffs, claimant or claimants, reasonable expenses, including reasonable attorney's fees, and shall direct him or them to account to the corporation for the remainder of the proceeds so received by him or them. This paragraph shall not apply to any judgment rendered for the benefit of injured shareholders only and limited to a recovery of the loss or damage sustained by them.
   The New York courts have interpreted this provision to provide for fee-sharing, but not fee-shifting. *See, e.g., Glenn v. Hoteltron Sys., Inc.,* 74 N.Y.2d 386, 547 N.Y.S.2d 816, 547 N.E.2d 71, 75 (1989) (holding that New York provision with language nearly identical to Civil Rule 23.1(j) was what we would call "fee-sharing," not "fee-shifting" provision—i.e., that litigation expenses awarded under provision are to be borne by corporation, not "losing party"). Citing *Glenn,* the FLETCHER CYCLOPEDIA states, "The obligation to reimburse expenses to a shareholder who brings a successful derivative action should be the obligation of the corporation, and not the obligation of the defendants." 13 TIMOTHY P. BJUR & JAMES SOLHEIM, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 6044, at 357 (1995 rev.) While the semantic distinction between "fee sharing" and "fee shifting" does not seem to be similarly observed by the Delaware Supreme Court, it is worth noting that under Delaware corporate law, what we call *fee sharing* (but which the Delaware Supreme Court considers *fee shifting*—even in cases where the litigation creates, and the fees are collected from, a common fund) can, provided that a three-part test is met, remain available to plaintiffs even in the event a derivative suit is dismissed as moot. *See Waterside Partners v. C. Brewer & Co.,* 739 A.2d 768, 769–70 (Del.1999) (holding first, that "fee shifting" [what this court would call fee sharing] was not appropriate where common benefit was conferred on corporation through successful proxy contest parallel to but outside context of derivative litigation, and second, that policy embracing fee shifting in cases in which benefit to corporation was created outside litigation context would have "no limiting principle"). Despite the semantic complications between fee sharing and fee shifting, and Delaware's willingness to consider what we would call fee sharing in cases where derivative suits are dismissed as moot, Delaware appears to have no rule like Alaska Civil Rule 23.1(j) or statute like AS 10.06.435(j) or N.Y. Bus. Corp. L. § 626(e). Given the apparent derivation of the Alaska statute and rule, we read Rule 23.1(j) to provide only for fee-sharing. Our existing fee-shifting rule, Rule 82(a), adequately deals with attempts to recover litigation expenses from defendants in derivative suits.

10. *See, e.g., Glenn,* 547 N.Y.S.2d 816, 547 N.E.2d at 71.

Thus, perhaps a corporation ordered under Rule 23.1(j) to reimburse successful derivative-suit plaintiffs could seek indemnification, possibly on a subrogation theory, from the defendant officers or directors whose acts were the basis for the derivative suit and the Rule 23.1(j) award. But the court did not order Ingalik to pay those expenses; the corporation voluntarily agreed to pay them by resolution of April 26, 1998. And a subrogated claim would give the corporation no greater rights than the plaintiff shareholders had. In short, no plaintiff in this case has a claim against these defendants under Rule 23.1(j).

Unlike Rule 23.1(j), Rule 82(a) is a fee-shifting rule.[11] Rule 82(a) provides for an award of attorney's fees to "the prevailing party." It is the proper framework for considering whether the defendant directors should reimburse attorney's fees directly incurred by Ingalik and attorney's fees incurred by or for Jerue and Demoski and potentially recoverable by Ingalik under an assignment or subrogation theory.

Because this is a shareholder derivative action, the question whether the plaintiffs were "prevailing parties" under Rule 82(a) ultimately depends at least in part on the principles that determine whether a shareholder derivative suit has been "successful." As we will see, this question turns on whether the superior court erred in concluding that the shareholders did not establish that their failure to make a demand on the board before suing was excused. This is so because, even though the plaintiff shareholders' litigation goals were achieved, there was a dispute about why they were achieved.

The shareholders filed suit in late January 1998 seeking reinstatement of the corporation and a shareholders' meeting at which new directors could be elected. The state reinstated the corporation in early February 1998. This prevented dissolution and distribution of corporate assets. The corporation held a shareholders' meeting to elect directors in April 1998. The relief the complaint sought was thus achieved, and in June the superior court dismissed the complaint with prejudice, apparently because the complaint was mooted by the corporation's reinstatement and the annual meeting.[12]

**11.** *See Municipality of Anchorage v. Gallion*, 944 P.2d 436, 445–48 (Alaska 1997) (differentiating between fee-sharing and fee-shifting rules); *Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 755 (Alaska 1996).

**12.** The June dismissal order did not specify the ground for dismissal. But during the October oral argument on the attorney's fees motions, the superior court announced:

> We should certainly proceed on the assumption that the dismissal was on mootness grounds, and the reason I say that is because it would have made no sense at all to reserve decision on prevailing party status had the case been otherwise, would it? ... For today's purposes, let's ... assume mootness is the basis for the dismissal.

Those words and the other relevant record passages demonstrate that the superior court dismissed the complaint for mootness, not on a theory the plaintiff shareholders did not make a formal demand. *See* Dissent at 752–753. The superior court thought at the October hearing that the demand excuse issue was critical to the competing fees motions, and it proceeded to consider the parties' arguments on that issue. It told the plaintiffs' lawyer, "demand is the part of this case that's giving me the biggest problem right now," and asked him directly, "What have you done to bear the burden of proving that demand was excused in this case?" These comments are inconsistent with concluding that the court had already resolved the issue when it dismissed the complaint. If the court had decided that issue in June, there would have been no reason to consider it again in October. The court was clearly attempting to decide whether the plaintiffs had satisfied their burden of proving that demand was excused, and was thus necessarily resolving an issue it had not previously decided.

Dismissal in June for failure to prove that demand was excused is also contextually improbable. There was no real dispute in June that the relief the complaint sought had been achieved, i.e., that the complaint was moot. In comparison, the demand excuse issue was in substantial dispute. It is unlikely that the dismissal would have been with prejudice if the court had thought the complaint was deficient. It is also unlikely that the parties' submissions as of June would have allowed the court to resolve the demand excuse issue on its merits. (But if that had been the basis for the dismissal, it is probable the dismissal order would have said so.) Before the court decided the demand excuse issue in October, the parties submitted extensive filings not before the court when it dismissed the complaint in June.

In context, we read the order deciding the fees motions to mean that the directors *would have been entitled to dismissal* ("were thus entitled to

We assume that derivative suit plaintiffs may not necessarily be ineligible to recover litigation expenses under Rule 23.1(j) even though a court dismisses their lawsuit after the board's remedial actions moot their derivative suit claims.[13] Filing suit may force a recalcitrant board to act, securing a valuable benefit to the corporation. This may also be sufficient to make plaintiff shareholders (and a plaintiff corporation for whom they acted) "prevailing parties" for Rule 82(a) purposes.

■ We think that whether plaintiff shareholders are "prevailing parties" in a shareholder derivative action should turn on whether their lawsuit is "successful in whole or in part."[14] If a corporate benefit is achieved, the focus is on the causal relationship between the lawsuit and the benefit.[15]

We assume here that the individual plaintiffs and Ingalik were benefitted by actions—reinstating the corporation and holding the annual meeting—taken after the plaintiff shareholders sued. But were these actions the result of the suit? Or would they have been taken if the shareholders had made a formal demand before suing? Or, indeed, would they have been taken even absent either a pre-suit demand or any suit at all?

As we will see, the superior court's rejection of Jerue and Demoski's assertion that a demand was excused resolves these questions for purposes of the plaintiffs' motion for costs and attorney's fees.

### 1. The requirement of a pre-suit formal demand

Before filing a shareholder derivative suit, a plaintiff is required by AS 10.06.435(c) and Civil Rule 23.1(c) to make a formal demand on the board "to secure the action the plaintiff desires," unless that demand is "excused."[16] The statute and the rule excuse the demand requirement if "a majority of the directors is implicated in or under the direct or indirect control of a person who is implicated in the injury to the corporation."[17]

The statute and the rule require a shareholder who fails to make a formal demand to plead "with particularity" the facts establishing excuse.[18] The statute and the rule also impose on a shareholder opposing a motion to dismiss the burden of establishing excuse: "In a motion to dismiss for failure to make demand on the board the shareholder shall have the burden to establish excuse."[19]

---

dismissal") on the demand excuse issue had that issue been fully litigated or decided in June. We do not read it to mean that the court actually dismissed the complaint for failure to prove demand excuse, rather than for mootness.

13. *Compare Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605–10, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (discussing and rejecting "catalyst" rule for determining "prevailing party" status) *with DeSalvo v. Bryant*, 42 P.3d 525, 530 (Alaska 2002) (discussing catalyst theory); *State, Dep't of Natural Res. v. Tongass Conservation Soc'y*, 931 P.2d 1016, 1020 (Alaska 1997) (discussing catalyst theory and possible differences between "purposive" federal fee-shifting statutes and Alaska Civil Rule 82).

We do not need to decide here whether policies potentially justifying a catalyst approach to encourage certain types of claims would apply to shareholder derivative actions. *See* Matthew D. Slater, *Civil Rights Attorney's Fees Awards in Moot Cases*, 49 U. Chi. L.Rev. 819 (1982).

14. AS 10.06.435(j); Civil Rule 23.1(j); *see also* 13 Timothy P. Bjur & James Solheim, Fletcher Cyclopedia of the Law of Private Corporations § 6045.01, at 366 (1995 rev.) (footnotes omitted).

15. *E.g., In re Oracle Sec. Litig.*, 852 F.Supp. 1437, 1447 (N.D.Cal.1994) (citing *Chrysler Corp. v. Dann*, 223 A.2d 384, 389 (Del.1966), as holding that "lack of causal connection between alleged corporate benefit and the derivative suit justified denial of fee award").

16. AS 10.06.435(c) provides:

Unless excused on grounds that a majority of the directors is implicated in or under the direct or indirect control of a person who is implicated in the injury to the corporation, before an action in the right of a domestic or foreign corporation is instituted a plaintiff who has standing under (b) of this section shall make a formal demand upon the board to secure the action the plaintiff desires. Alaska Civil Rule 23.1(c) is identical.

17. AS 10.06.435(c); Alaska R. Civ. P. 23.1(c).

18. AS 10.06.435(d); Alaska R. Civ. P. 23.1(d).

19. AS 10.06.435(d); Alaska R. Civ. P. 23.1(d). AS 10.06.435(d) provides:

If a shareholder fails to make a formal demand under (c) of this section the complaint shall state with particularity the facts establishing

Jerue and Demoski argue that they satisfied these requirements, despite their failure to make any pre-suit demand on the board; they assert that a demand would have been "futile."

The demand requirement is an important aspect of corporate democracy. Among other things, it gives the corporation a fair opportunity to decide whether to take action directly and to receive the proceeds of any recovery.[20] And it gives the corporation an opportunity to remedy problems internally, without exposing it to avoidable litigation expense.[21] The FLETCHER CYCLOPEDIA discusses the demand requirement:

> The particularized pleading requirements are designed to strike a balance between a shareholder's claim of right to assert a derivative claim and a board of director[s'] duty to decide whether to invest resources of the corporation in pursuit of the shareholder's claim of corporate wrong. But the requirements of demand futility and refusal of demand are predicated upon and inextricably bound to issues of business judgment and standards of that doctrine's applicability. The demand requirement in derivative proceedings serves as a form of notice to the corporation. It is designed to assure that the shareholder affords the corporation the opportunity to address the alleged wrong without litigation and to control any litigation which does occur. It also provides a safeguard against abuse that could undermine the

basic principle of corporate governance that the decisions of a corporation, including the decision to initiate litigation, should be made by the board of directors. A determination on a motion to dismiss, whether based on demand refused or demand excused, involves essentially a discretionary ruling on a predominantly factual issue.

The demand should provide the directors with sufficient information regarding the standing of the plaintiff, the relief sought, and the grounds for relief. In some states, the demand must be in written form. The directors have a reasonable time within which to investigate the claim and to make a decision, although some state statutes set forth a final time period. The demand inquiry and authority to respond may be delegated to a special litigation committee.[22]

## 2.  Applicable standard of review

We have never before addressed the demand requirement of AS 10.06.435(c) and Civil Rule 23.1(c), and have consequently never adopted a standard for reviewing a conclusion that shareholders did not meet their burden of establishing excuse.

Most appellate courts review for an abuse of discretion a trial court's determination that the demand requirement was not ex-

---

excuse under (c) of this section. In a motion to dismiss for failure to make demand on the board the shareholder shall have the burden to establish excuse.
Alaska Civil Rule 23.1(d) is identical.

**20.** *E.g., Aronson v. Lewis,* 473 A.2d 805, 809 (Del.1984) (acknowledging that demand requirement "is a rule of substantive right designed to give a corporation the opportunity to rectify the alleged wrong without litigation, and to control any litigation which does arise") (citation omitted), *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244, 255 (Del.2000); *Werbowsky v. Collomb,* 362 Md. 581, 766 A.2d 123, 144 (2001) (discussing futility exception, and noting that demand requirement "gives the directors— even interested, non-independent directors—an opportunity to consider, or reconsider, the issue in dispute ... [which] may be their first knowledge that a decision or transaction they made or approved is being questioned").

**21.** *E.g., Gaubert v. Fed. Home Loan Bank Bd.,* 863 F.2d 59, 65 (D.C.Cir.1988) ("The demand requirement also serves the goal of judicial economy, by giving the corporation a full opportunity to put its house in order before it is prematurely hauled into a court to account for its actions.") (citation omitted); *Brehm,* 746 A.2d at 255 ("[B]y requiring exhaustion of intracorporate remedies, the demand requirement invokes a species of alternative dispute resolution procedure which might avoid litigation altogether."); *see generally* BJUR & SOLHEIM, *supra* note 9, § 5963, at 127 ("[D]emand requirement in derivative proceedings serves as a form of notice to the corporation. It is designed to assure that the shareholder affords the corporation the opportunity to address the alleged wrong without litigation and to control any litigation which does occur.") (footnote omitted).

**22.** BJUR & SOLHEIM, *supra* note 9, § 5963, at 127 (footnotes omitted).

cused.[23] They typically apply that standard because determining the necessity of a demand is a fact-based inquiry. For example, in *Lewis v. Graves*, the United States Court of Appeals for the Second Circuit, applying the federal analog to Alaska Civil Rule 23.1,[24] held that "the decision as to whether a plaintiff's allegations of futility are sufficient to excuse demand depends on the particular facts of each case and lies within the discretion of the district court." [25]

Until recently, the mother court of corporate law,[26] the Delaware Supreme Court, followed the same approach.[27] But in *Brehm v. Eisner*, that court, applying the Delaware counterpart to Alaska Civil Rule 23.1, held that this issue is subject to de novo review.[28] The court stated that "[i]n a Rule 23.1 determination of pleading sufficiency ... this Court[ ] is merely reading the English language of a pleading and applying to that pleading statutes, case law and Rule 23.1 requirements. To that extent, our scope of review is analogous to that accorded a ruling under Rule 12(b)(6)." [29]

In comparison, the United States Court of Appeals for the Third Circuit applies a mixed standard of review. In *Garber v. Lego* it stated:

> To the extent that we are reviewing the district court's determination of demand futility based upon the facts of this case, the scope of our review is for abuse of discretion. Our review of the legal precepts employed by the district court and of its interpretation of those legal precepts is plenary.[30]

We choose to follow the Third Circuit, and therefore adopt a mixed standard of review. We agree with the Delaware Supreme Court that it is a question of law whether pleadings satisfy a legal standard, such as the demand requirement. But the question of demand excuse potentially also involves fact-based analysis which is better reviewed under the abuse of discretion standard. This case demonstrates the factual nature of these disputes. A mixed standard of review recognizes that the superior court made both legal and factual determinations when it ruled, after considering materials beyond the pleadings, that the shareholders did not prove that demand was excused.

### 3. Excusing the failure to make a presuit demand

The pre-suit demand required by AS 10.06.435(c) and Alaska Civil Rule 23.1(c) is excused if "a majority of the directors is implicated in or under the direct or indirect control of a person who is implicated in the injury to the corporation." [31]

Delaware and the federal courts frame the exception to the demand requirement in terms of futility.[32] In those courts, making a demand is considered futile and thus excused where corporate officers and directors are under an influence rendering them incapable of making decisions for the corporation.[33] Courts following the futility-of-demand principle apply procedural rules that differ from Alaska Civil Rule 23.1. Federal Civil Rule 23.1 and Delaware Chancery Court Rule 23.1

**23.** *E.g., Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir.1983); *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 (9th Cir.1980); *Shelton v. Thompson*, 544 So.2d 845, 850 (Ala.1989).

**24.** Fed.R.Civ.P. 23.1.

**25.** *Graves*, 701 F.2d at 248 (citation omitted).

**26.** *Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1343 (7th Cir.1990) (acknowledging Delaware Supreme Court as mother court of corporate law), *overruled on other grounds*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

**27.** *Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000).

**28.** *Id.* at 253 (*applying* Del. Ch. Ct. R. 23.1).

**29.** *Id.* at 254.

**30.** 11 F.3d 1197, 1200 (3d Cir.1993) (citations omitted).

**31.** AS 10.06.435(c); Alaska R. Civ. P. 23.1(c).

**32.** *Lewis v. Curtis*, 671 F.2d 779, 784–85 (3d Cir.1982), *superseded on other grounds by Garber v. Lego*, 11 F.3d 1197, 1206–07 (3d Cir.1993); *Coyer v. Hemmer*, 901 F.Supp. 872, 886 (D.N.J. 1995); *Brehm*, 746 A.2d at 253.

**33.** *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d 244.

are very similar to each other[34] and with regard to the demand requirement are nearly identical. Their pleading requirements implicitly address futility, but do not specify criteria for deciding when futility excuses a failure to make a demand:

> The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort.[35]

It is not necessary in this case to decide whether excuse in Alaska is the same as excuse elsewhere. Alaska Statute 10.06.435(c) and Alaska Civil Rule 23.1(c) were not modeled after a specific state provision or model code.[36] Although our standard is similar to that applied in some other jurisdictions to discern when demand would be futile,[37] the plain text of our rule provides a specific test for excuse: establishing that a majority of the directors are "implicated in the injury to the corporation."[38] The Alaska Code Revision Commission's study of Alaska's proposed revised Corporations Code before it was enacted in 1988 supports this interpretation:

> Section .435c requires that a qualified shareholder make a demand upon the board to secure such action as the plaintiff

desires, unless the shareholder can show that such demand would be futile. Under Section .435(d), the burden to establish excuse is upon the plaintiff-shareholder. If a demand on the board is not excused, Section .435(e) provides that a decision by the board, consonant with its duties of care and loyalty, that in its business judgment such litigation would not be in the best interest of the corporation, terminates the right created by Section .435(a). A shareholder is thereafter precluded from offering evidence that any or all of the directors who have decided that the litigation not go forward are implicated in the wrong complained of.[39]

#### 4. Demand in this case

Because the superior court did not base its denial of the shareholders' fees motion on the sufficiency of their complaint, it is unnecessary to decide whether their complaint satisfied the requirement that it "state with particularity the facts establishing excuse...."[40] The court instead ruled after it reviewed the documents the parties submitted or discussed when they briefed the excuse issue in their competing motions for attorney's fees. The superior court held that "the practices complained of give rise to any number of conflicting inferences—but by no means demonstrate that 'a majority of the

---

34. *Aronson*, 473 A.2d at 808 n. 1.

35. Fed.R.Civ.P. 23.1; Del. Ch. Ct. R. 23.1.

36. Civil Rule 23.1 was adopted in 1988 as part of the legislature's comprehensive revision of the Alaska Corporations Code. Ch. 166, §§ 1, 17, SLA 1988; *see generally* The Alaska Code Revision Commission, *A Comparative Study of the Proposed Alaska Corporations Code (ACC) with the Final 1984 Draft of the Revised Model Business Corporation Act (RMBCA)* (Apr.1985) (CODE REVISION REPORT). That report indicates that Rule 23.1(c)'s demand requirement, as enacted in AS 10.06.435(c), was "original work by the code revision commission." *Id.* at 42.

37. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1209–10 (9th Cir.1980) (noting that demand requirement is excused when either majority of board is interested in underlying transaction or underlying transaction was completely unrelated to corporate purpose); *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 264–65 (1st Cir.1973) (same); *Kaufman v. Kansas Gas &*

*Elec. Co.*, 634 F.Supp. 1573, 1580–81 (D.Kan. 1986) (holding that complaint must allege self-dealing or bias on part of majority of board of directors to establish excuse); *Aronson*, 473 A.2d at 814 (holding that futility is established when plaintiff raises reasonable doubt that (1) majority of directors are disinterested and independent, and (2) the challenged transaction was otherwise "product of a valid exercise of business judgment"); *Marx v. Akers*, 88 N.Y.2d 189, 644 N.Y.S.2d 121, 666 N.E.2d 1034, 1040–41 (1996) (holding that demand requirement is excused when (1) majority of board is interested in challenged transaction, (2) board members did not inform themselves about transaction, and (3) challenged transaction is "so egregious on its face that it could not have been the product of sound business judgment").

38. AS 10.06.435(c); Alaska R. Civ. P. 23.1(c).

39. CODE REVISION REPORT, *supra* note 36.

40. Alaska R. Civ. P. 23.1(d).

directors [were] . . . implicated in [an] injury to the corporation.' "

Moreover, because there was no injury to the corporation, the superior court did not abuse its discretion by so holding. The plaintiff shareholders submitted numerous documents to support their request for attorney's fees and to oppose the defendant directors' requests for attorney's fees and indemnification. But these materials and the remainder of the undisputed record did not establish that the board would have rejected a demand to reinstate the corporation and hold the annual meeting. Nor did they establish that the lawsuit achieved these benefits. Instead, the record contains evidence that would have permitted a finding that the board would have reinstated the corporation and held the meeting whether or not there was a demand or a lawsuit. This included evidence (attached to the plaintiffs' complaint or found in affidavits they submitted to the superior court) that the defendant directors had attempted to hold the annual meeting as recently as the prior fall; that they had met only thirty-six days before the plaintiffs filed suit; that even before the plaintiffs sued, the defendant directors had written the corporation's shareholders to encourage them to fill vacancies on the board until the next annual meeting and election; that they had already scheduled a shareholders' meeting for June; and that when the corporation had failed to pay its taxes in the past, on each occasion it was reinstated and its assets were not liquidated. Moreover, plaintiffs' exhibits listed corporate checking account transactions; one is for a January 7, 1998 check payable to the State of Alaska for "biennal [sic] filing fee," suggesting that the directors had taken steps to reinstate the corporation weeks before plaintiffs filed suit.[41]

5. **How the unexcused failure to make demand affects plaintiffs' attorney's fees motion.**

■ The plaintiff shareholders cannot recover litigation expenses because their case was dismissed for mootness before they either made a demand or proved that demand was excused. Failure to prove that demand was excused necessarily means that they did not show that the corporation would not have been reinstated and that the annual meeting would not have been held if they had not sued. Because the court dismissed their action for mootness, the plaintiffs could not recover litigation expenses unless they showed that their suit was "successful," i.e., that it conferred some measurable benefit on the corporation even though the court dismissed their complaint. But by failing to prove that a demand was excused, they necessarily failed to establish that the board would not have reinstated the corporation and held the annual meeting but for the lawsuit.

■ In the narrow context of derivative suits, failure to make a demand or prove that demand was excused is fatal to an award of attorney's fees and costs because a pre-suit demand might have prompted remedial action without need for litigation. The policy rationale of the demand requirement dictates this result. Demand is required to give a corporation the opportunity to rectify an alleged wrong without litigation and to control any litigation which does arise.[42] Awarding litigation expenses without a demand or proof of demand excuse would undermine the demand requirement and these policy objectives. Moreover, the modern reality of large corporations requires this result. At any given moment a large corporation may be the subject of a number of derivative suits filed by shareholders. In this context, almost any action taken by a corporate board could arguably satisfy some plaintiff's lawsuit. Awarding fees without requiring demand or proof of demand excuse would open corporations to unwarranted fees claims predicated on unrelated corporate actions.

41. Although there was a factual dispute regarding the question of demand excuse (whether a majority of the directors were implicated in the alleged injury), the parties were apparently content to litigate the fees and demand issues based on the extensive memoranda, affidavits, and exhibits they filed. No party sought to introduce live testimony on this point or requested an evidentiary hearing. The shareholders do not claim on appeal that the superior court erred by resolving these issues without an evidentiary hearing.

42. *See supra* pp. 746–747 and notes 20–21.

In this case, without proof of demand excuse, and particularly given Ingalik's past course of corporate events, the trial court permissibly might have found that this corporation would have been reinstated and the meeting held even without a demand or a lawsuit. Therefore, the shareholders' failure to prove that demand was excused meant that they did not prove that the derivative suit was "successful."[43] This meant that Jerue and Demoski were not entitled to an award of attorney's fees and costs.

An inverse hypothetical helps demonstrate the significance of failing to make a demand or prove demand excuse. Consider a dissenting shareholder whose attorney makes a timely demand upon directors before filing a derivative suit. If the directors promptly take curative action that satisfies the shareholder's concerns, there would be no suit and clearly no attorney's fees awarded to the shareholder. This illustrates the importance of the demand requirement and explains why we must affirm the denial of fees to Jerue and Demoski. The reasoning is twofold: First, if the hypothetical shareholder who satisfies the demand procedure is not entitled to attorney's fees, it is inequitable to award fees to shareholders who failed to make a demand or prove that it was excused. Second, awarding fees to Jerue and Demoski would undermine successful operation of the demand requirement as illustrated above, and encourage wasteful litigation that could have been avoided if demand were properly made.

■ Ingalik has not clearly explained on what theory it should be awarded fees. It must demonstrate its prevailing party status to recover fees under Rule 82(a). But if the plaintiff shareholders who asserted claims in the corporation's behalf are not prevailing parties, we do not see how the corporation can be a prevailing party as to those claims, either. Any attorney's fees claim Ingalik could pursue under subrogation or assignment theories to recover its voluntary payment of Jerue and Demoski's fees would be subject to the considerations that bar Jerue and Demoski's fees motion. Ingalik apparently also seeks an award for the post-joinder fees it incurred directly. But because Ingalik did not become a party plaintiff until after the events occurred that mooted the derivative suit, it is not a prevailing party for purposes of recovering those fees, either.

We therefore conclude that the superior court did not err in denying the plaintiffs' attorney's fees motion.

## C. The Defendant Directors' Rule 82 Attorney's Fees Award

■ The superior court awarded the defendant directors Rule 82 prevailing party attorney's fees against Jerue and Demoski. In arguing that this was error, Jerue and Demoski contend in part that they, not the directors, were the prevailing parties because their complaint was dismissed for mootness and because they "accomplished what they had hoped to with this litigation." They assert that the "burden was on the former management to argue and show that the annual meeting ... would have happened without the suit."

■ A litigant seeking Rule 82 attorney's fees must show that it is the prevailing party.

We first reject the directors' assertion that, because the superior court granted their motion to dismiss with prejudice, they were the prevailing parties.[44] Because the court dismissed the complaint for mootness, it is no more likely that the directors achieved their litigation goals than the plaintiffs.

The court apparently based its finding that the directors were the prevailing parties on its October conclusion that the shareholders had not proved that demand was excused. This conclusion did not alter the reason for the June dismissal or turn the dismissal order into a ruling on the merits. Dismissing for mootness did not explicitly or implicitly resolve the issue of who prevailed, and in-

**43.** AS 10.06.435(j); Alaska R. Civ. P. 23.1(j).

**44.** They also argue that the court dismissed the suit "on the grounds that no formal demand had been made as required by Civil Rule 23.1(c)." This argument is without merit: the court dismissed for mootness, not because demand was unexcused.

deed, the court stated it was retaining jurisdiction to decide "prevailing party status." That question turned on an issue—whether demand was excused—the court had not resolved in June.

We assume for discussion's sake that if a shareholder derivative lawsuit were the only reason directors took remedial actions benefitting a corporation and mooting the complaint, the directors would not be the prevailing parties.[45] And as we noted in Part III.B, under some circumstances plaintiffs may be able to recover attorney's fees in at least some types of cases dismissed for mootness.[46] But the ruling that these plaintiffs did not bear their burden of proving excuse did not amount to a finding that the board would have heeded a pre-suit demand or that its remedial actions were unrelated to the lawsuit.

■■■ In general, we are reluctant to encourage parties in a lawsuit dismissed for mootness to litigate the merits only to establish for Rule 82 purposes who would have been the hypothetical prevailing party. Rule 82 is only intended to partially compensate prevailing parties, not to provide an incentive for merits litigation that would not otherwise take place.[47]

Evidence, discussed in Part III.B.4, would have permitted a finding that the directors would have cured the corporate deficiencies absent the lawsuit. But the memorandum opinion awarding fees did not refer to this evidence. And it did not find that the directors would have remedied the deficiencies either spontaneously or in response to a pre-suit demand. Nor did it find that the actions that mooted the complaint and benefitted the corporation were not attributable to the lawsuit. The evidence would not have compelled such findings. The directors provided no direct evidence why they acted, and no director offered an affidavit explaining why the old board acted. The superior court recognized when it denied the shareholders' Rule 23.1(j) attorney's fees motion that there were conflicting inferences about whether a majority of the directors were implicated in an injury to the corporation. These conflicting inferences were also relevant to the reasons the board acted.

In summary, the plaintiffs' failure to meet their burden of proving that a formal demand was excused did not necessarily mean that the directors were the prevailing parties. Because the complaint was dismissed as moot shortly after its filing as a result of the defendants' apparently responsive actions, it would be unrealistic to treat the directors as prevailing parties unless they demonstrated why the suit became moot, i.e., why the corporation was reinstated and the annual meeting was accelerated. Notwithstanding other evidence permitting conflicting factual inferences, the directors offered no direct evidence why things were done that gave the plaintiffs the relief they requested. Because we conclude as a matter of law that the directors did not meet their burden of proof on the issue of prevailing party status, we vacate their Rule 82 attorney's fees award and remand for entry of a corrected judgment.[48]

### D. The Directors' Statutory Indemnification Award

■■■ The superior court ruled that the directors' "prevailing party status also" entitled them under AS 10.06.490(c) to full indemnification from Ingalik.[49] The plaintiff

---

**45.** *City of Yakutat v. Ryman,* 654 P.2d 785, 793 (Alaska 1982) (holding that defendant city was not Rule 82 prevailing party where trial court found that complaint was at least partly responsible for city's corrective actions resulting in dismissal of complaint for mootness).

**46.** *See supra* note 13.

**47.** *See* Alaska R. Civ. P. 82(b)(2).

**48.** Likewise, the judgment should not include a prevailing-party costs award.

**49.** AS 10.06.490(c) provides:

> To the extent that a director, officer, employee, or agent of a corporation has been successful on the merits or otherwise in defense of an action or proceeding referred to in (a) or (b) of this section, or in defense of a claim, issue, or matter in the action or proceeding, the director, officer, employee, or agent *shall be indemnified* against expenses and attorney fees actually and reasonably incurred in connection with the defense.
> (Emphasis added.)

shareholders and Ingalik argue that because the court did not find the election and all subsequent board action to be invalid, the business judgment rule required the court to enforce the new board's resolution that denied indemnification to the defendant directors.[50] The defendant directors respond that because indemnification under AS 10.06.490(c) was mandatory, the board had no authority to adopt a resolution denying them indemnification.[51]

This issue turns on whether the defendant directors satisfied their burden of demonstrating that they were entitled to indemnification under AS 10.06.490(c). We conclude that they did not. We therefore vacate the indemnification award and remand for entry of a corrected judgment.

It appears that indemnification is mandatory if the conditions of AS 10.06.490(c) are met, because that subsection provides that a corporate director who "has been successful on the merits or otherwise" in defense of certain lawsuits—including derivative suits— "shall be indemnified."[52] We assume that if this subsection applies, mandating indemnification, the board has no discretion to adopt a resolution denying indemnification.

But to be eligible for mandatory indemnification under AS 10.06.490(c), these defendant directors had to have "been successful on the merits or otherwise in defense of an action...."[53] The defendant directors did not demonstrate that they successfully defended the litigation on its "merits or otherwise"; they simply obtained dismissal of the complaint, apparently by providing the relief the complaint sought. As discussed in Part III.C, above, the defendant directors did not establish why the remedial actions were taken. The conflicting inferences about how the lawsuit came to be mooted also pertain to the issue whether the directors successfully defended the litigation. Because the defendant directors did not establish why action was taken that mooted the complaint, they did not meet their burden of establishing a right to mandatory indemnification under AS 10.06.490(c). The plaintiffs' failure to prove that a demand was excused does not mean that the defendant directors must have been

**50.** The resolution provided:
> THEREFORE BE IT RESOLVED, that the Board of Directors of Ingalik, Incorporated acting pursuant to AS 10.06.490(a), hereby denies any indemnification of defense costs, including court costs, litigation expenses, and legal fees to said defendant officers and directors, specifically, Kenneth Chase, Shannon Chase, Gloria Millett[,] and Theodore Kruger, Jr. for their defense of the action brought by shareholders Carl Jerue, Jr. and Ernie Demoski, Sr.

Soon after adopting this resolution, the new board agreed to indemnify Theodore Kruger, Jr., the only incumbent reelected to the board.

**51.** Defendant directors also argue that they were entitled to discretionary indemnification and that the board's resolution was contrary to Ingalik's bylaws, which require indemnity to the "full extent permitted" by law. These alternative arguments are resolved by our analysis of AS 10.06.490(c).

**52.** In comparison, the other subsections of AS 10.06.490 appear to make indemnification permissive or discretionary, regardless of the success of the litigation. Thus, AS 10.06.490(a), (b), and (d) provide in pertinent part:
> (a) A corporation *may indemnify* a person who was, is, or is threatened to be made a party to a completed, pending, or threatened action or proceeding, whether civil, criminal, administrative, or investigative, other than an action by or in the right of the corporation, by reason of the fact that the person is or was a director, officer, employee, or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise....
>
> (b) A corporation *may indemnify* a person who was, is, or is threatened to be made a party to a completed, pending, or threatened action by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee, or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise....
>
> ....
>
> (d) *Unless otherwise ordered by a court, indemnification* under (a) or (b) of this section *may only be made by a corporation* upon a determination that indemnification of the director, officer, employee, or agent is proper in the circumstances because the director, officer, employee, or agent has met the applicable standard of conduct set out in (a) and (b) of this section....

(Emphasis added.)

**53.** AS 10.06.490(c).

"successful" in defending the suit. The complaint was dismissed for mootness, not on a theory demand was unexcused.

Few cases discuss equivalent situations. Courts requiring mandatory indemnification under substantially identical statutes do so when the defendant achieves success on the merits or otherwise, including termination of claims by agreement without any payment or assumption of liability.[54] Courts are reluctant to ask why the result was achieved.[55] But in those cases, it appears that the defendants did nothing to achieve the dismissal; they certainly paid no consideration, and they took no corrective action that mooted the lawsuits.

Because the superior court did not apply the statutory standard for determining whether the defendant directors were entitled to indemnification under AS 10.06.490(c), we must vacate the indemnification award. And because the directors simply asserted below that the dismissal with prejudice entitled them to indemnification, they failed to establish that the dismissal was not attributable at least in part to a desire to resolve the lawsuit. We therefore remand for entry of a corrected judgment that deletes the indemnification award.

## IV. CONCLUSION

The plaintiff shareholders are not prevailing parties because the court found that their failure to make a demand was not excused. In the absence of a demand, it is uncertain whether the defendant directors would have responded to a demand as they responded to the lawsuit, affording the plaintiffs the relief they sought. Although the suit might factually have brought about the relief, this is not enough. Plaintiffs must show that a demand

would not have resulted in the same relief. Because this is difficult to show and the difficulty is a product of their failure to make a demand, they can not be regarded as prevailing parties.

The defendant directors are not prevailing parties because they did not prove that the lawsuit was not a cause of the remedial action they took, or that if a demand had been made they would have taken the remedial action.

For these reasons, we (1) AFFIRM the superior court's holding that the plaintiff shareholders were not prevailing parties and were consequently not entitled to attorney's fees under Civil Rules 23.1 and 82; (2) VACATE the award of costs and Civil Rule 82 attorney's fees to the defendant directors against the plaintiff shareholders; (3) VACATE the defendant directors' award of indemnification under AS 10.06.490(c); and (4) REMAND for entry of a corrected judgment reflecting that all parties are to bear their own costs and attorney's fees.[56]

CARPENETI, Justice, dissenting.

I agree with the court's conclusion that the plaintiffs were not excused from the requirement that they make a demand on the corporation before filing suit, and that their failure to make a demand precludes their recovery of attorney's fees. But because a review of the record shows that the superior court dismissed the complaint precisely because the plaintiffs failed to carry their burden of showing that their failure to make a demand was excused, I dissent from Parts III.C. and III.D of today's ruling.

In vacating the superior court's award of attorney's fees to the defendant directors,

---

**54.** *Waltuch v. Conticommodity Serv. Inc.,* 88 F.3d 87, 96‑97 (2d Cir.1996) (holding that Waltuch was entitled to mandatory indemnification because he "walked away without liability and without making a payment"); *Wisener v. Air Express Int'l Corp.,* 583 F.2d 579 (2d Cir.1978) (construing similar Illinois statute to same effect); *B & B Inv. Club v. Kleinert's, Inc.,* 472 F.Supp. 787 (E.D.Pa.1979) (requiring mandatory indemnification for officer who made no monetary payment, but who was dismissed from case with prejudice because second officer paid to settle claim).

**55.** *Waltuch,* 88 F.3d at 96.

**56.** Reversal of the mandatory indemnification award entered under AS 10.06.490(c) does not prevent Ingalik from indemnifying director Kruger as an exercise of board discretion under AS 10.06.490(a) or (b). The board's resolution of April 26, 1998 seems to have exercised that discretion in favor of indemnifying director Kruger's litigation expenses.

today's opinion assumes that the superior court dismissed the complaint for mootness: "[I]n June the superior court dismissed the complaint with prejudice, *apparently* because the complaint was mooted by the corporation's reinstatement and the annual meeting." [1] It concludes that a dismissal for mootness did not establish that the defendant directors were the prevailing parties. The court's assumption that the complaint was dismissed for mootness is incorrect.

A review of the record shows that, at the time the case was dismissed, the superior court did not specify a reason for its action. Under our well-established case law, when a trial court does not specify a reason for its decision, we may review the record and affirm if any basis for the court's action is supported by the record.[2] Moreover, by the time of its final ruling,[3] the superior court unmistakably based its decision on the plaintiffs' unexcused failure to make a demand on the corporation.

Although unspoken, the court's opinion today suggests that, once a superior court announces a rationale for its decision, it may not change it. But this is not the law. We have consistently upheld the proposition that one superior court judge who inherits a case from another superior court judge is free to reexamine and reverse an earlier decision in that case if convinced that it is erroneous: "[I]t [is] entirely reasonable for a judge whose responsibility it is to try a case to reconsider and reverse an earlier ruling if convinced that that ruling was erroneous." [4]

If one judge may reconsider and reverse a predecessor judge's ruling in a case, then *a fortiori* a single judge may reconsider and modify the basis for his or her own earlier ruling in a case. That is what happened in this case, as a review of the record shows.

The record establishes: (1) that the defendants proposed three reasons to dismiss the case; (2) that the superior court dismissed the case without specifying the reason for the dismissal; (3) that at the same time the court declined to award attorney's fees to either side but set the matter on for a hearing; (4) that at the beginning of the hearing the court suggested one basis for the dismissal, mootness; but (5) during the hearing the court suggested a different basis for the dismissal; and (6) that by the time of its written order shortly thereafter the superior court unambiguously held that it dismissed the case because demand was not excused. I examine each of these events in turn.

Defendant directors offered three reasons for dismissing the case. The first, and most extensively argued, was that the plaintiffs had not shown that their failure to make a demand on the corporation was excused. Accordingly, we can uphold the dismissal on this ground. Indeed, the court today rests its affirmance of the superior court's denial of attorney's fees to plaintiffs on this very ground.[5]

It is true that, at the time the superior court granted the motion for dismissal, it did not state a reason for its decision; it even modified the defendant's proposed order by

1. Op. at 742 (emphasis added). In a footnote, the court quotes the superior court's direction to counsel at the outset of oral argument on the attorney's fees motions to "assume mootness is the basis for the dismissal." Op. at —— n. 12. As shown below, however, by the end of the hearing and in the order that followed, the superior court made clear that the dismissal was based on the plaintiffs' failure to show that their lack of demand was excused. *See infra* at 752–753.

2. *See, e.g., Municipality of Anchorage v. Higgins*, 754 P.2d 745, 748 (Alaska 1988) (appellate court may uphold lower court's ruling on any ground that is apparent from the record and that supports the decision as a matter of law).

3. The court's opinion creates a straw man when it observes that the superior court's comments at the October hearing "are inconsistent with concluding that the court had already resolved the issue when it dismissed the complaint." (Opinion at ——, n. 12) This dissent does not contend that the superior court had already resolved the issue when it dismissed the complaint. It does contend that a trial court has the right to change its mind and to revisit a decision before it is final. *See infra* text at note 4 and note 4.

4. *Stepanov v. Gavrilovich*, 594 P.2d 30, 36 (Alaska 1979). *See also West v. Buchanan*, 981 P.2d 1065, 1067 (Alaska 1999) (second trial judge within her discretion to reconsider predecessor trial judge's ruling).

5. Op. at 746–747.

striking language awarding fees to the defendants. Rather, in what can only be described as a cautious approach to a difficult issue, the court "retain[ed] jurisdiction to determine prevailing party status and to award costs and fees as may be appropriate."

At the commencement of the hearing to address the question of attorney's fees, it is also true that the superior court suggested that mootness might be the grounds for its action.[6] But during the course of the hearing the superior court, through its probing of counsel for both sides, made quite clear that it considered the plaintiffs' failure to make a demand, and the lack of excuse for that failure, to be critical to its earlier decision to dismiss. For example, the court stated, "Rule 23.1 says [the plaintiffs] bear the burden of proving that the demand was excused." Later, the court noted that "[t]he demand is the part of this case that's giving me the biggest problem right now. What have you done to bear the burden of proving that the demand was excused in this case?" Finally, the court observed, if the plaintiffs were alleging inaction "on the part of the directors, isn't it just commonsensical that you would first ask them to take the action you want?"

All of these statements call into question this court's conclusion that the superior court dismissed the case on mootness grounds. And, by the end of the hearing and the filing six days later of the superior court's written decision, it is quite clear that the court had dismissed the case on the basis of the plaintiffs' failure to show that their lack of demand was excused:

> Under Alaska R. Civ. P. 23.1(d), a shareholder who files suit without having made the formal demand contemplated by Rule 23.1(c) bears the burden of proving that demand was excused.... Demand was not excused and defendants were thus entitled to dismissal pursuant to Alaska R. Civ. P. 23.1(d). Consequently, they must be recognized as the "prevailing party" entitled to recover attorney's fees.

Thus, while the superior court's original order of dismissal did not specify the grounds for dismissal, the court plainly stated in its final order after the hearing to determine the prevailing party that the plaintiffs' failure to make a demand "was not excused and defendants were thus entitled to dismissal pursuant to Alaska R. Civ. P. 23.1(d)."

In sum, the whole record establishes that the superior court dismissed the case due to the plaintiffs' failure to make a formal demand. Because the superior court's ruling on the merits was that the plaintiffs failed to show that the demand requirement was excused, the director defendants were successful on the merits and were the prevailing party. Also, because the director defendants were successful on the merits, they are entitled to mandatory indemnification. I would, therefore, affirm the judgment of the superior court in its entirety. At the very least, given our demonstrated uncertainty concerning the basis for the superior court's decision, we ought, in fairness to the superior court, to remand the case and allow the superior court to make clear the basis upon which it dismissed the case.

---

**6.** This suggestion, set out in the court's opinion at ——— n. 12, did not amount to a finding or ruling by the superior court. At most, it showed that the court was considering mootness as the rationale for its decision to dismiss the case. But even if it had formally ruled on that basis, there is no reason why the court could not change its ruling. *See supra* text at note 4.