**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: May 31, 2016
Date Decided: August 4, 2016

Blake A. Bennett, Esquire
Cooch and Taylor, P.A.
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801

A. Thompson Bayliss, Esquire
Sarah E. Hickie, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Gina M. Serra, Esquire
Jeremy J. Riley, Esquire
Rigrodsky & Long, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

Re: *In re Xoom Corporation Stockholder Litigation*,
Consolidated Civil Action No. 11263-VCG

Dear Counsel:

This matter is before me on Plaintiffs' application for attorneys' fees, in what is known as a mootness proceeding. Specifically, in connection with a cash-out merger of their corporation, purported representatives of a stockholder class alleged insufficient and misleading disclosures in addition to price and process deficiencies in connection with the merger; the corporation made some of the disclosures demanded, in response to the litigation, thereby mooting those claims; and subsequently, the Plaintiffs voluntarily dismissed the action with respect to the

individual plaintiffs only. The Plaintiffs now seek an award of attorneys' fees for the benefit worked on all stockholders, consistent with this Court's recommended procedure under *In re Trulia, Inc. Stockholder Litigation.*[1]

## I. BACKGROUND

The underlying action concerns the merger, announced July 1, 2015, between PayPal Holdings, Inc. ("PayPal") and Xoom Corporation ("Xoom" or the "Company"), through which PayPal acquired Xoom for $25.00 per share (the "Merger"). The Merger closed on November 12, 2015, after receiving near-unanimous stockholder approval.[2]

The Plaintiffs filed their initial individual complaints in the wake of the announcement of the Merger, between July 8, 2015 and July 15, 2015, alleging unfair price and process claims against the "Individual Defendants," directors of Xoom, and aiding and abetting claims against the merging parties. The Company filed a proxy on Schedule 14A (the "Preliminary Proxy") with the Securities and Exchange Commission ("SEC") on July 21, 2015. Eight days later, on July 29, 2015, the Plaintiffs filed their Verified Consolidated Class Action Complaint (the "Complaint"), adding the allegation that the Individual Defendants breached their fiduciary duties by filing a false and materially misleading Preliminary Proxy to

---

[1] 129 A.3d 884 (Del. Ch. 2016).
[2] *See* Trans. Aff. of Sarah E. Hickie, Esq., Ex. A (September 2015 Form 8-K), at 2.

induce Xoom stockholders to support the unfair deal. Depending on how the deficiencies recited are counted, the Plaintiffs alleged *thirty-eight* mal-disclosures requiring relief.[3]

The Plaintiffs moved to expedite on August 5, 2015. Two days later, the Company filed a definitive proxy on Schedule 14A (the "Definitive Proxy") with the SEC, supplementing the disclosures contained in the Preliminary Proxy (the "Supplemental Disclosures"). I heard argument on Plaintiffs' Motion to Expedite on August 14, 2015—following utterance of the Definitive Proxy—after which I denied expedition. On November 19, 2015, the Plaintiffs voluntarily dismissed the action with prejudice as to the Plaintiffs only, reserving the right to seek a mootness fee. The Plaintiffs filed an application for fees (the "Fee Application") on January 19, 2016, and after full briefing, I heard argument on May 10, 2016. I requested additional information, and the matter was submitted for decision thereafter.

The Plaintiffs seek $275,000 in attorneys' fees, noting that their efforts in bringing this litigation caused Xoom to make four Supplemental Disclosures in its Definitive Proxy, thereby mooting four disclosure claims asserted in Plaintiffs' Complaint. The Supplemental Disclosures pertain to (1) the amount of fees received by Qatalyst—the Company's financial advisor—within the past two years from

---

[3] *See* Am. Compl. ¶¶ 115–18.

eBay Inc. ("eBay"), former owner of PayPal;[4] (2) the value to the Company of any potential recovery for a $30 million loss due to fraud (the "BEC Fraud"); (3) certain elements of the financial analyses performed by Qatalyst; and (4) details of conversations regarding post-closing employment between PayPal and members of the Company's board of directors (the "Board") and management. I describe each of the Supplemental Disclosures below.

1. Qatalyst Fees

The Preliminary Proxy provides:

Qatalyst Partners provides investment banking and other services to a wide range of corporations and individuals, domestically and offshore, from which conflicting interests or duties may arise. In the ordinary course of these activities, affiliates of Qatalyst Partners may at any time hold long or short positions, and may trade or otherwise effect transactions in debt or equity securities or loans of Xoom, Parent, Holdings or eBay, or certain of their respective affiliates. During the two year period prior to the date of Qatalyst Partners' opinion, no material relationship existed between Qatalyst Partners or any of its affiliates and Xoom, Parent, Holdings or eBay pursuant to which compensation was received by Qatalyst Partners or its affiliates *other than* Qatalyst acting as financial advisor to eBay in connection with (i) its acquisition of Braintree, Inc. in December 2013 and (ii) its proposed sale of eBay Enterprise; however, Qatalyst Partners and/or its affiliates may in the future provide investment banking and other financial services to Xoom, Parent, Holdings or eBay and any of their respective affiliates for which it would expect to receive compensation.[5]

---

[4] eBay was PayPal's corporate parent for thirteen years until Summer 2015, when eBay spun off PayPal almost simultaneously with PayPal's acquisition of Xoom.
[5] *See* Trans. Aff. of Kent Bronson, Esq., Ex. D ("Preliminary Proxy"), at 47–48.

The Plaintiffs argue that the Preliminary Proxy improperly failed to disclose the amount of compensation Qatalyst received from Xoom, PayPal, and eBay in connection with services provided over the last several years. The Definitive Proxy added the following Supplemental Disclosure: "During the two year period ended August 6, 2015, Qatalyst Partners received compensation for services provided to eBay of approximately $7 million and will receive a customary fee upon the closing of the proposed sale of eBay Enterprise."[6] The Plaintiffs argue that this information is relevant and important to stockholders because it informed them of the magnitude of the potential conflict of one of the Company's financial advisors, and that the Board was at least aware of, and had considered, the potential conflict.

### 2. The BEC Fraud

The Company disclosed in its Preliminary Proxy that "[o]n January 5, 2015, Xoom announced that it had been a victim of a business e-mail compromise that was carried out against Xoom in late December 2014, as more fully disclosed in Xoom's Form 8-K filed with the SEC on January 5, 2015."[7] The Plaintiffs argue that the Preliminary Proxy was improperly "silent as to whether, and the extent to which, the Board considered the possibility of recouping the millions lost in the BEC Fraud," and that "Xoom stockholders are entitled to know both the value attributed to any

---

[6] *See* Trans. Aff. of Kent Bronson, Esq., Ex. F ("Definitive Proxy"), at 48.
[7] Preliminary Proxy, at 29.

5

potential recovery as well as whether such recovery was factored into the Acquisition price."[8] The Plaintiffs also contend that this information is significant because it bears on the Board's "stance, willingness and abilities to prevent and recover losses incurred as a result of a threat."[9] The Definitive Proxy added the following Supplemental Disclosure: "As disclosed in our 2014 Annual Report, Xoom recorded a loss of $30.8 million in the fourth quarter of 2014 in connection with the business e-mail compromise. As our chief executive officer indicated on our February 10, 2015 earnings call, the Company does not expect any material recovery."[10]

### 3. Multiples in Qatalyst Financial Analysis

The Preliminary Proxy did not disclose the selected multiples used by Qatalyst in its Illustrative Selected Companies and Illustrative Selected Transactions analysis, providing only the median numbers. The Supplemental Disclosure provided the comparable companies' individual multiples. The Plaintiffs argue that this disclosure "was valuable and material because multiples are a crucial element of these market-based analyses, as these analyses are fundamentally based on comparison and relative valuation."[11]

---

[8] Pl's Mot. to Expedite ("MTE") 13.
[9] Pl's Opening Br. 15–16.
[10] Definitive Proxy, at 29.
[11] MTE, at 22.

6

4. <u>Management Employment</u>

The Preliminary Proxy was silent as to the details of discussions with Xoom management about the retention of certain employees. The Supplemental Disclosure disclosed that such communications had taken place, the extent of those communications, and the intention to retain Xoom's CEO post-Merger, but that no specific employment terms had been discussed. The Plaintiffs contend that these disclosures are relevant and material because they "speak to whether there are individual interests held by management and/or the Board in play which could potentially override the interests of shareholders."[12]

\* \* \*

The Defendants contend that Plaintiffs' Fee Application should be denied in its entirety because the Supplemental Disclosures did not significantly alter the total mix of information, and therefore were immaterial; in the alternative, they argue that, should the Court determine some fee is appropriate, the *Sugarland*[13] factors cannot support an award close to the $275,000 that Plaintiffs seek.

## II. ANALYSIS

This Court follows the American Rule, under which parties are responsible for their own fees and costs.[14] Exceptions exist. The theory under which a mootness

---

[12] Pl's Opening Br. 16.

[13] *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142 (Del. 1980).

[14] *See, e.g.*, *Horsey v. Horsey*, 2016 WL 1274021, at \*1 (Del. Ch. Mar. 21, 2016).

7

fee is awarded is a subspecies of the common-benefit doctrine, which recognizes that, where a litigation provides a benefit to a class or group, costs necessary to the generation of that benefit should also be shared by the group or its successor.[15] Here, the Plaintiffs generated four additional disclosures, which the Defendants concede resulted from the litigation. The question is whether those disclosures added value to the stockholders, and, if so, how much of Plaintiffs' costs should thus be borne by the Defendants, in equity.

I first address whether the Supplemental Disclosures must have been material to stockholders to support an award of fees. This Court in *Trulia* made clear that, to support a settlement and class-wide release based on disclosures only, the materiality of the disclosures to stockholders must be plain.[16] The mootness context, in my view, supports a different analysis. That is because, here, the individual Plaintiffs have surrendered only their *own* interests; the dismissal is to them only, not to the stockholder class. Thus, with respect to the class, there is no "give" to balance against the disclosure "get"; the benefit is the "get" of the disclosures, with no waiver

---

[15] Fees may be awarded "where litigation is rendered moot through resulting action by the defendants." *Waterside Partners v. C. Brewer & Co., Ltd.*, 739 A.2d 768, 770 (Del. 1999). A party is entitled to fees where "the suit was meritorious when filed; action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and the resulting corporate benefit was causally related to the lawsuit." *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980).

[16] *Trulia*, 129 A.3d at 898 ("[P]ractitioners should expect that disclosure settlements are likely to be met with continued disfavor in the future unless the supplemental disclosures address a *plainly material* misrepresentation or omission . . . .") (emphasis added).

8

of class rights to be set against that benefit.[17]  Therefore, a fee can be awarded if the disclosure provides some benefit to stockholders, whether or not material to the vote. In other words, a helpful disclosure may support a fee award in this context.

In examining whether and to what extent a fee is appropriate here, I am guided by the factors our Supreme Court enumerated in *Sugarland Industries, Inc. v. Thomas*.[18]  Most important here is the benefit worked; any disclosure benefit is, of course, unquantifiable, and the fee awarded therefore is unavoidably arbitrary to some degree.

I note first that the Supplemental Disclosure regarding the conflict of the financial advisor, although providing some information as to magnitude lacking in the initial disclosure, was only mildly helpful to stockholders.  While banker conflicts can be central to the primary consideration on which the stockholders must vote—the sufficiency of the consideration—here, stockholders had already been told that the advisor had done work for the acquirer and were aware that a second advisor had been retained.  In this context, the amount of fees received in the two years before the Merger from the acquirer's parent—$7 million—adds some detail that is mildly helpful to stockholders.  Next, with respect to the information provided

---

[17] Of course, the costs of litigation borne by corporations theoretically affects deal prices generally.

[18] The *Sugarland* factors are: "(1) the benefit achieved in the action; (2) the contingent nature of the undertaking; (3) the difficulty of the litigation and the efforts of counsel; (4) the quality of the work performed; and (5) the standing and ability of counsel." *Franklin Balance Sheet Inv. Fund v. Crowley*, 2007 WL 2495018, at *12 (Del. Ch. Aug. 30, 2007).

regarding the lack of value the Company ascribed to potential recovery in regard to the BEC Fraud, this is information I consider somewhat valuable at best; it clarified that an asset of the Company was (in management's view) worthless, but did not provide information contrary to that view or otherwise call the Merger consideration into question. Similarly, I find the Supplemental Disclosure that provided stockholders with information about management discussions of future employment with the acquirer only somewhat of value. In other circumstances, this type of disclosure might be important to stockholders evaluating a sale, but here, the discussions revealed were at a general level only, and, importantly in my view, this was a sale where PayPal was the only bidder; in other words, this was not a case where one bidder might receive an advantage over another due to management concerns about future employment. Finally, I find that the supplemental disclosure of additional financial metrics concerning Qatalyst's comparable-companies analysis are of minimal benefit to a stockholder considering this Merger.

Of the four disclosures that resulted from the litigation, those involving the banker conflict and post-Merger employment discussions are the most valuable. None of the four is particularly strong. Cumulatively, I find the Supplemental Disclosures represent a modest benefit to the stockholders.

The Plaintiffs seek a fee of $275,000 for having produced the benefits described above. They affirm that attorney time invested, another *Sugarland* factor,

is 63 hours in regard to the Supplemental Disclosures achieved, implying a rate of something over $4,000/hour, which they characterize as reasonable given the contingent nature of the representation. I take this representation of time invested as made in good faith, but also recognize the difficulty in segregating out time productively spent obtaining disclosures from time spent, unfruitfully, on the many unsuccessful allegations brought by the Plaintiffs. The Defendants, for their part, advocate for no fee, in light of what they characterize as the non-materiality of the Supplemental Disclosures. I have found above that the standard is benefit to the class, not materiality, and I have found some benefit here.

In the merger context, under our model, this Court relies on the plaintiffs' bar, as representatives of stockholders, to vindicate those stockholders' rights to a fair transaction and an informed vote. Given the fast-moving process typical in the merger context, it is common that suit is filed at a preliminary phase of the proceedings. The decision of plaintiffs' counsel, proceeding on a contingent-fee basis, to pursue such litigation involves significant risk; any recovery to counsel is contingent on producing value for the stockholder class. Because no recovery is available absent value so produced, when counsel have in fact worked a benefit on the class, this Court must award a fee sufficient to encourage wholesome levels of litigation.

The position of the Plaintiffs' counsel is reminiscent of a rodeo bull-rider. The cowboy gets his bull by the luck of the draw. A "good" bull is aggressive and vigorous; a "bad" bull is the opposite. A successful ride of a good bull results in a high score. It takes a good rider to ride a good bull, but not even a great rider can wring a high score from a bad bull. Not even great counsel can wring significant stockholder value from litigation over an essentially loyal and careful sales process.

Where litigation develops significant stockholder value, this Court will set fees accordingly. Here, I find that the Supplemental Disclosures worked a modest benefit on the stockholders, and that in light of that benefit and the other *Sugarland* factors, and in light of the stage of the litigation at which settlement occurred, that an award of fees and costs of $50,000 is appropriate here.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III